Reinken *v.* Fuehring *et al.*

---

No. 16,447.

REINKEN *v.* FUEHRING ET AL.

MUNICIPAL CORPORATION.—*Cleaning Streets.*—*Assessment Against Abutting Property-Owners a Local Assessment, Not a Tax.*—Under the provision of the charter of the city of Indianapolis (Acts 1891, p. 137) which authorizes the city to contract for sprinkling and sweeping the streets at the cost of the property-holders abutting on such streets, an assessment made against an owner of property along a street required to be swept, to pay the expense of such sweeping, is not a tax, but a local assessment, and does not fall within the constitutional provision requiring an equal and uniform rate of taxation.

SAME.—*Police Power.*—As the general public has an interest in keeping the streets clean, the city may, in the exercise of the police power conferred upon it by the State, order them swept, and as the abutting property-owner derives a benefit from such sweeping not enjoyed by the general public, he may be required, by assessment, to pay the expense of such sweeping; and such assessment does not amount to a taking of private property without compensation and without due process of law.

SAME.—*General Tax.*—As the property-owner is fully compensated for his outlay in the enhanced value of his property, he may be taxed generally also with the remainder of the public for cleaning other streets in which the public alone have an interest.

SAME.—*Sweeping Street Crossing.*—The fact that the statute contemplates the sweeping of the crossings does not render it invalid, as it can not be said that the property-owners do not receive a special benefit from keeping them clean.

From the Marion Circuit Court.

*C. S. Denny* and *W. F. Elliott,* for appellant.

*A. L. Mason,* for appellees.

COFFEY, J.—The appellees brought this suit in the Marion County Circuit Court to foreclose a lien for the amount assessed against the appellant's real estate for sweeping the street in front of his property in the city of Indianapolis, under a contract made between the city and the appellees pursuant to the provisions of the city charter. A demurrer to the complaint was overruled, and the appellees had judgment, from which this appeal is prosecuted.

The charter of the city of Indianapolis is found in the

acts of the General Assembly of 1891, page 137. It provides for the mode of improving the streets and the payment for such improvements, and confers on the city, through its proper officers, the power to make contracts for sprinkling and sweeping such streets, in the city, as it may deem proper, and to assess against the property-holders abutting on such streets the cost of such sprinkling and sweeping. The only question before us for decision relates to the constitutionality of so much of the act as authorizes the city to contract for sprinkling and sweeping the streets at the cost of the property-holders along the line of such streets, it being contended by the appellant that these provisions are unconstitutional for the reasons :

*First.* That it violates the provisions of our State Constitution requiring an equal and uniform rate of taxation.

*Second.* Because, even if the city has power to compel abutting property-owners to pay for sweeping the streets in front of their property, it has no power to compel them to do so, and, at the same time, compel them to pay into the general fund a part of the cost of cleaning other streets as provided for in the act.

*Third.* Because the proceeding which the act attempts to authorize amounts to a taking of private property without due compensation and due process of law.

To support his contention as to the first proposition presented, the appellant relies, to some extent, upon the case of *Gridley* v. *City of Bloomington*, 88 Ill. 554, and the case of *City of Chicago* v. *O'Brien*, 111 Ill. 532. These cases hold that an ordinance making it the duty of the owner or person occupying premises abutting upon a street to keep the sidewalks free from snow and ice, and providing for the enforcement of such ordinance by the infliction of penalties, is void. The cases seem to rest, principally, upon the peculiarity of the laws of the State of Illinois, under which the lot-owner does not own the fee in the street. The last

case, however, was decided by a divided court, three of the judges refusing to concur in the conclusion reached.

The authorities make a clear distinction between the word "*taxation*" and the word "*assessment*." "'*Taxes*' are impositions for purposes of general revenue; '*assessments*' are 'special and local impositions upon property in the immediate vicinity' of an improvement for the public welfare, 'which are necessary to pay for the improvement, and laid with reference to the special benefits which such property derives from the expenditure.'" *Palmer* v. *Stumph*, 29 Ind. 329.

This distinction is recognized in nearly all the States of the Union. For a collection of the authorities upon this subject see the case above cited.

The assessment, therefore, made against the owners of property along the streets required to be swept, under the act in question, to pay the expense of such sweeping, is not a tax, but a local assessment.

The question is then presented as to whether a local assessment for this purpose can be sustained under our Constitution?

If it can be sustained at all, it must be upon the ground that it is the proper exercise of the police power of the State, and a special benefit to the abutting property-owner.

The power of a municipal corporation to order sidewalks of a particular kind, and to assess against the abutting property-owner an amount necessary to pay for the same, and to pay for keeping the same in repair and proper condition for the use of the public, is generally upheld upon the ground that it is proper exercise of the police power of the State. *Goddard, Petitioner, etc.*, 16 Pick. 504; *Palmer* v. *Way*, 6 Col. 106; Cooley Taxation, pp. 396–7; *State, etc.,* v. *Mayor, etc.*, 8 Vroom, 415; *Kirlby* v. *Boylston*, 14 Gray, 249; *Pedrick* v. *Bailey*, 12 Gray, 161; *Moore* v. *Gadsden*, 93 N. Y. 12; *Hartford* v. *Talcott*, 48 Conn. 525.

Judge Cooley says: "The cases of assessments for the

construction of walks by the side of the streets, in cities and other populous places, are more distinctly referable to the power of police. These foot-walks are not only required, as a rule, to be put and kept in proper condition for use by the adjacent proprietors, but it is quite customary to confer by the municipal charters full authority upon the municipalities to order the walks of a kind and quality by them prescribed to be constructed by the owners of adjacent lots at their own expense, within a time limited by the order for the purpose, and in case of their failure so to construct them, to provide it shall be done by the public authorities, and the cost collected from such owners, or made a lien upon their property. When this is the law the duty must be looked upon as being enjoined as a regulation of police, because of the peculiar interest such owners have in the walks, and because their situation gives them peculiar fitness and ability for performing, with promptness and convenience, the duty of putting them in proper state, and of afterwards keeping them in a condition suitable for use." Cooley Taxation, *supra*.

Assuming, as held by these authorities, that the power to make local assessments to pay for local improvements or benefits is to be referred to the police power of the State, we are naturally led to inquire whether the assessments provided for in the charter now under consideration amount to a taking of private property without compensation and without due process of law as contended by the appellant.

Mr. Sedgwick, in his valuable work on Statutory and Constitutional Law, 434, says: "The clause prohibiting the taking of private property without compensation, is not intended as a limitation of the exercise of those police powers which are necessary to the tranquillity of every well-ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments. It has always been held that the Legislature may make police regulations, although they may interfere

with the full enjoyment of private property, and though no compensation is given."

Judge Dillon, in his work on Municipal Corporations, Vol. 1, 212, says: "Every citizen holds his property subject to the proper exercise of this (police) power, either by the State Legislature directly, or by public or municipal corporations to which the Legislature may delegate it. \* \* \* It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. \* \* \* If he suffers injury it is either *damnum absque injuria*, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."

In the case of *Goddard, petitioner, etc., supra*, in speaking of an ordinance which required the abutting property-owners to keep the sidewalks free from snow and ice, the Supreme Court of Massachusetts said: "But we think it is rather to be regarded as a police regulation, requiring a duty to be performed highly salutary and advantageous to the citizens of a populous and closely built city, and which is imposed upon them because they are so situated as that they can most promptly and conveniently perform it, and it is laid not upon a few, but upon a numerous class, all those who are so situated, and equally upon all who are within the description composing the class. \* \* \* Although the sidewalk is part of the public street, and the public have an easement in it, yet the adjacent occupant often is the owner of the fee, and generally has some peculiar interest in it and benefit from it, distinct from that which he enjoys in common with the rest of the community. He has this interest and benefit, often in accommodating his cellar door and steps, a passage for fuel, and the passage to and from his own house to the street. \* \* \* For his own accommodation he would have an interest in cleaning the snow from

his own door. The owners and occupiers of house-lots and other real estate, therefore, have an interest in the performance of this duty, peculiar and somewhat distinct from that of the rest of the community."

The case of *Village of Carthage* v. *Frederick*, 122 N. Y. 268, involved the validity of an ordinance which required the owners of abutting property to keep the sidewalks adjacent to their property free from snow and ice at their own expense, and after a careful review of some of the authorities above cited, the Court of Appeals reached the conclusion that the ordinance was valid as a reasonable exercise of the police power of the State.

The principles which rule the cases above cited can not, in our opinion, be distinguished from the principles which rule the case at bar. Of course, it is not claimed that in the exercise of the police power such assessments could be made and collected from the abutting property-owner unless he had a special interest and derived a special benefit therefrom not enjoyed by the public in general, but if he has a special interest in the improvement of the street and sidewalk, and in keeping them free from snow and ice, so he has a special interest in keeping them free from accumulating filth. It is matter of common observation, of which we must take notice, that property located upon well improved streets, kept clean, is more desirable than property on unimproved streets where mud and filth are permitted to accumulate and obstruct their use. It is safe to assert, we think, that keeping a street clean adds to the rental, if not to the permanent value of property located thereon ; and for this reason, among others, the abutting property-owner has a special interest in such cleaning not enjoyed by the general community. For the reason that the public in general has an interest in keeping the streets free from filth, the city may, in exercising the police power conferred upon it by the State, order them swept, and for the further reason that the abutting property-owner derives a benefit from such sweeping not en-

joyed by the general public he may be required, by assessments, to pay the expenses incident to such sweeping.

It follows from what we have said that the assessments provided for by the act under consideration do not amount to a taking of private property without compensation and without due process of law.

Assessments of the kind we are now considering are made upon the principle that the person assessed is benefited in the increased value of his property, either rental or permanent, over and above the benefits received by the public, in a sum equal to the amount he is required to pay. It is upon this theory alone that they can be sustained.

If the property-owner is fully compensated for his outlay in the enhanced value of his property, we see no reason why he may not be taxed generally also with the balance of the public for cleaning other streets in which the public alone have an interest, and which are not, and, indeed, can not be swept as the streets upon which his property abuts. We are not able to perceive how such a tax would be unjust or inequitable, inasmuch as he receives as much benefit therefrom, in contemplation of law, as any other member of the community. As he has been fully compensated for his outlay in sweeping the street upon which his property is situated, he should not be heard to complain of such payment when called upon to bear his portion of other public burdens.

Nor do we think the fact that the statute contemplates the sweeping of the crossings renders it invalid. It can not be said that the property-owners do not receive a special benefit from keeping them clean. Sweeping the street in front of the property would be of little benefit if filth and rubbish were permitted to accumulate upon the crossings, so as to render them unfit for use. If the property does in fact receive a special benefit from sweeping the crossings, there is no reason why those who are thus benefited should not pay the expense

Having carefully examined all the objections urged against

the validity of so much of the statute as is here called in question, we have reached the conclusion that it is not unconstitutional, and that the court did not therefore err in overruling a demurrer to the complaint before us.

Judgment affirmed.

ELLIOTT, J., took no part in the decision of this cause.

