STEVENS *v.* CITY OF PORT HURON.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—SPECIAL AS-
SESSMENTS—POWER TO LEVY—STREET SPRINKLING.
In this case, involving the power of the city of Port Huron to
levy a special assessment upon city lots to pay for sprinkling
the street upon which they abut, the power is denied; Mr.
Justice HOOKER, with whom concur Chief Justice McALVAY
and Justices GRANT and OSTRANDER, denying the power on
the ground that the sprinkling is of no substantial or perma-
nent benefit to the property, and Mr. Justice CARPENTER de-
nying it on the ground that the charter of the city does not
authorize a special assessment for sprinkling by the front foot
rule without any hearing as to benefits. MOORE, BLAIR, and
MONTGOMERY, JJ., dissenting.

Cross-appeals from St. Clair; Tappan, J. Submitted
January 18, 1907. (Docket No. 55.) Decided October
4, 1907.

Bill by Herman W. Stevens, Fannie F. Mitchell, and
Jennie J. Wilson against the city of Port Huron to set
aside an assessment for a sprinkling tax. From a decree
sustaining defendant's demurrer as to complainant Stev-
ens, and overruling the demurrer as to complainants
Mitchell and Wilson, complainant Stevens and defendant
appeal. Affirmed as to complainants Mitchell and Wil-
son and reversed as to complainant Stevens.

*William T. Mitchell* (*Stevens, Graham & Stevens*, of
counsel), for complainants.

*Joseph Walsh,* for defendant.

HOOKER, J. An ordinance of the city of Port Huron
provided for the assessment of the cost of sprinkling
streets upon the premises abutting the street in proportion
to street frontage, irrespective of the use made of the

premises, and whether they are vacant lots, or lands having buildings upon them.  A bill was filed on behalf of Fannie F. Mitchell, Jennie J. Wilson, and Herman W. Stevens, owners of premises in severalty, to set aside an assessment for such purpose.  A demurrer to the bill was overruled as to Mitchell and Wilson, the assessment being held void as to them because their vacant property was assessed at the same rate per front foot as were residence properties.  It was sustained as to Stevens, because the bill failed to show which of his property was vacant, it alleging that of a large number of separate lots only two had dwellings upon them.  Stevens and the city have appealed.  Counsel appear to agree that the meritorious question is whether it is lawful to base an assessment for street sprinkling upon the foot front rule.

The important question in this case is whether a statute authorizing a municipal corporation to pass an ordinance requiring the cost of street sprinkling to be assessed upon the abutting land in proportion to frontage, is valid.  The cases where this question has been considered are few and discordant.  The differences seem to rest on a disagreement among the judges as to whether it can truly be said that the sprinkling of a street can have any substantial or permanent effect upon the value of the premises; some holding that it does to some extent protect the property from injury, and makes the locality a more comfortable and therefore desirable one to live in, thereby enhancing rental value, and that consequently enhancement by paving and from street sprinkling differ only in degree. Other judges say that this is a similarity more fanciful than real, that it rests on a refinement of logic rather than a substantial and practical benefit, and that such a rule once established will furnish a precedent for the imposition of other burdens of like character, such as keeping streets and sidewalks free from ice, mud, water, snow, dust, etc., for the convenience of the traveling public, on no better ground than that a well kept street is more desirable for residence than one which is not.  Of the cases called to

our attention the earliest is *State* v. *Reis*, 38 Minn. 371.

The case turns upon the question indicated, a somewhat extended argument being made to show that, although the element of permanence is lacking, there is no difference in principle between sprinkling and paving, inasmuch as it cannot be claimed that the latter is eternal, or as stated in the opinion :

"But if permanence or durability is to be the test, how long must the beneficial results last in order to constitute an improvement ? It certainly will not be claimed that the work must be eternal in duration, or imperishable in character. We are unable to see any difference in principle between the work of street sprinkling, the results of which, unless repeated, last but a day, and the construction of a block pavement or wooden sidewalk, which wears out or decays, and has to be rebuilt every few years. When a pavement or sidewalk has worn out, the future value of the property is not enhanced by it, any more than it is by street sprinkling when that ceases. Neither do we see that it makes any difference whether the substance applied to the surface of the street is wood, which has to be renewed every few years, or water, which has to be applied daily. Each benefits the adjacent property as long as it lasts, and no longer. It is not the agency used, or its comparative durability, but the result accomplished, which must determine whether a work is an improvement in the sense in which that word is here used."

This case was followed by *Reinken* v. *Fuehring*, 130 Ind. 382 (15 L. R. A. 624). It related to street sweeping, the cost of which was made the subject of local assessment. In its last analysis this case appears, like the other, to rest upon the principle that the person assessed is benefited in the increased value of his property, either rental or permanent, over and above the benefits received by the public, in a sum equal to the amount he is required to pay. It is upon this theory alone that they (local assessments) can be sustained.

This case cites *Village of Carthage* v. *Frederick*, 122 N. Y. 275, decided in 1890, where an ordinance imposing

a penalty for not cleaning snow and ice from a sidewalk was sustained. It appears to approve the suggestion that the imposition of such a burden on the landowner is defensible under the police power of the State, as "requiring a duty to be performed highly salutary and advantageous to the citizens of a populous and closely built city, and which is imposed upon them because they are so situated that they can most promptly and conveniently perform it," a rather astounding and startling reason for imposing a public burden on a citizen.

The New York case is not left to rest upon this suggestion, however, for it closes with the significant language:

"We are unable to yield to this reasoning, because it overlooks not only public safety and general convenience, but also the peculiar interest that every owner or occupant of real property has in a clean sidewalk in front of his own premises. Whatever adds to the usefulness of a sidewalk, adds both to the rental and permanent value of the adjacent lot."

The Indiana case was followed by the case of *Sears* v. *City of Boston*, 173 Mass. 71 (43 L. R. A. 834). This was a sprinkling case, and the ordinance was sustained. That case freely admits that the power must rest upon the theory that the assessment is in the nature of a diminution of that which at first is a public burden, by subtracting from it the amount of the special enhancement of private property arising from the expenditure of public money in part for its benefit.

The court recognizes the gravity of the crucial question for it says:

"It is a grave question whether the benefit that comes to abutting property from the watering of the street in front of it is such an improvement to the property that it can be made the subject of an assessment upon it. There must be a real substantial enhancement of value growing out of a public work to warrant an assessment of special taxes upon particular estates on account of it. The watering of streets produces only transitory effects, and makes no permanent change in the condition of the property."

But it continues:

"It greatly promotes the health and comfort of the people generally, who use the streets from time to time, but its greatest benefit is to the abutting estates as places for residence or the transaction of business. Indeed, so much more important to the occupants than to the general public have been the benefits from watering streets that until lately the expense of the work in this Commonwealth has usually been borne by the abutters, who have procured the watering to be done by private contractors. If a special benefit, accruing from day to day, which very materially increases the rental value of real estate by reason of the proximity of the property to the place where the beneficial work is done, can be treated as an improvement within the reason of the rule which permits special assessments, then such assessments may be made to pay the expense of watering streets."

Yet it adds that it is,—

"With some hesitation, we hold that there is an improvement of private property, when this work is done by a city regularly from day to day, which may warrant an assessment upon the abutters. It was so held in *State* v. *Reis*, 38 Minn. 371, and in *Reinken* v. *Fuehring*, 130 Ind. 382 (15 L. R. A. 624), although the cases generally which uphold such assessments relate to improvements of a permanent character. Many improvements from which real estate receives an incidental advantage are held to justify only general taxation. *Hammett* v. *Philadelphia*, 65 Pa. 146; *Washington Avenue*, 69 Pa. 352; *City of Erie* v. *Russell*, 148 Pa. 384, 386; *Dyar* v. *Village of Farmington*, 70 Me. 515, 527; *State* v. *Chamberlin*, 37 N. J. Law, 388; *Dietz* v. *City of Neenah*, 91 Wis. 422, 427."

The doubt is finally resolved in accordance with the result reached in Minnesota and Indiana, and the case has been followed twice since in Massachusetts. See *Trustees of Phillips Academy* v. *Inhabitants of Andover*, 175 Mass. 118 (48 L. R. A. 550); *Stark* v. *City of Boston*, 180 Mass. 293.

Upon the other side of this question we find the case of *City of Chicago* v. *Blair*, 149 Ill. 310 (24 L. R. A. 412), where it was held that the sprinkling of streets is not a

local improvement subject to local assessment. In the opinion we find the following:

"The only basis upon which either special assessment or special taxation can be sustained is, that from the proposed local improvement the property subjected to the tax or assessment will be enhanced in value to the extent of the burthen imposed. * * * If, therefore, from an inspection of the ordinance authorizing the making of the improvement, it appears from the nature of the work proposed that the market value of abutting or adjacent property would not be increased thereby, as a matter of law it would not be a local improvement, within the meaning of the statute, and no declaration of the corporate authorities could make it so. * * * Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied. * * *

"It cannot, we think, in any just sense, be said that street sprinkling is an improvement, within the contemplation of article 9 of the cities and villages act. In the nature of things, the sprinkling is only useful while the work is continued. In a few hours the beneficial effects are gone, and the property is worth no more than before the street was sprinkled.

"It is insisted, however, that all improvements—the building of sidewalks, the paving of streets, of however lasting material,—are evanescent, and in a few years at most, will necessarily require renewing, and that it makes no difference whether it be water put upon the street, or wood or granite,—that all alike are but temporary in character. In a sense this is true, but not in a practical sense. It is common experience that well paved streets and convenient and durable sidewalks, furnishing access to property, do, in fact, enhance its market value.

"It is, however, insisted that the sprinkling of the streets during the summer months renders the occupation of adjacent property more enjoyable and comfortable, and that therefore the property is enhanced in value. Doubtless the same result would follow by placing vases at convenient points on the streets to be filled every morning with fresh cut flowers, or by open air concerts, in which music should be selected with reference to the taste of the adjacent dwellers. So the employment of an efficient police force, whereby greater safety was felt, would add to

the enjoyment and comfort of persons residing upon the street. The proper watering and clipping of the grass upon lawn and terrace, the removal of garbage from the premises, besides saving expense to the occupant, would add to the enjoyment, and possibly the healthfulness, of the locality. These all might be improvements, and increase, while they continued, the desirability of the property in their locality. But they are not improvements, either of the property or of the street, within the legislative contemplation when granting power to make local improvements by special assessments.

"The tendency of municipal government to arrogate to . itself power and to encroach upon the rights of the citizen has led to the establishment of the statutory rules of construction, limiting its powers to those expressly granted, or arising, by reasonable and necessary implication, from the grant. It cannot, we think, be assumed that the legislature intended, by the language employed, to confer power upon the municipality to require work of the class provided for in this ordinance to be done by special assessment, even though it be held to be public work which the municipality is authorized to perform."

*Pettit* v. *Duke*, 10 Utah, 311, decided in 1894, held that a local assessment could not be imposed for street sprinkling. It is fair to say, however, that this case turned upon a construction of the charter, though the opinion rests the construction of the statute upon the distinction between paving and sprinkling, the former being considered a permanent improvement, while the latter is not. It is difficult to avoid the force of the statement regarding sprinkling, that—

"It is only useful while the work is continued, and in a few hours the beneficial effects are gone, and the property is worth no more than before the streets were sprinkled. It does not enhance the value of the abutting property, and therefore the city cannot demand special contribution by local assessment to bear the cost of the public work."

In *Kansas City* v. *O'Connor*, 82 Mo. App. 655, the court held:

"That portion of the contract providing for sprinkling

the street was ultra vires.   It was not within the power
of the city to lay a special tax against the abutting prop-
erty of the citizen for the purpose of paying for sprink-
ling.   A special tax against abutting property is based
and sustained on the idea that the work for which the tax
is laid is an improvement of the property, and sprinkling
to keep down the dust, while good for the comfort of the
inhabitants, is too intangible to be denominated an im-
provement of the property."

The question again arose in the case of *New York
Life-Ins. Co.* v. *Prest,* 71 Fed. 815, where Phillips, J.,
said:

"The sole foundation for the exercise of this extraordi-
nary power, so often pressed to the utmost verge of toler-
ation by these municipal governments, rests on the fact
or assumption that it operates in the nature of conferring
a practical, permanent benefit upon the property itself,
independent of any fancy, whim or caprice of the occu-
pant.   The term 'local improvements,' on which the
power asserted by this city charter is buttressed, had, at
the time of the legislative grant, a well-known and
sharply-defined meaning in law.   As applied to a street,
it meant the improvement of a street, as such, within the
design of its creation, 'by reason of which the real prop-
erty abutting or adjacent was especially benefited in its
market value.'   Cooley on Taxation, pp. 109, 110; 2 Dillon
on Municipal Corporations (4th Ed.), §§ 752, 753.   Its
exercise is inseparable from the idea and purpose of per-
manency, and must be of that character which, presump-
tively, works out an enhancement of the market value of
the property assessed.   *Kankakee Stone & Lime Co.* v.
*City of Kankakee,* 128 Ill. 176.   The supreme court of
Missouri manifestly entertains the same view.   In *Nee-
nan* v. *Smith,* 50 Mo. 529, the court says:

"'Local taxes for local improvements are merely assessments
upon the property benefited by such improvements, and to pay for
the benefits which they are supposed to confer.   The lots are in-
creased in value, or better adapted to the uses of town lots, by the
improvement.   Upon no other ground will such partial taxation
for a moment stand.'

"This is reasserted by the court in *City of St. Louis*
v. *Allen,* 53 Mo. 44, and the same view of the underly-
ing principle runs like a thread of gold through the dis-

cussion in *State* v. *Leffingwell*, 54 Mo. 458. On page 477 the court sums up the whole doctrine:

" 'Private property cannot be taken for public use without a just compensation. Special benefits cannot form any part of such benefits, unless they attach to and become a part of the taxed property.'

" Without such test, Judge Wagner very aptly declares that 'the time will probably come when it will be deemed advisable to provide statuary and other costly adornments for the park.' Black, P. J., in *City of Clinton* v. *County of Henry*, 115 Mo. 569, speaking on this subject, said:

" 'These cases hold that local assessments can be upheld, alone, on the ground of compensation in benefits to the particular property assessed.'

" This precise question has been considered and determined by the supreme court of Illinois in *City of Chicago* v. *Blair*, 149 Ill. 310 (24 L. R. A. 412). While it is to be conceded that, in some other jurisdictions, the contrary view has been expressed, the reason and authority of the Illinois court commands my entire approval. It holds that such an assessment as practiced by the city for street sprinkling was violative of fundamental law, because it is not predicable of an improvement—a betterment—of the adjacent property.  *  *  *

" It is true the court was there demonstrating that the ordinance in question was not reasonably within the terms of the statute authorizing special assessments. But the legislative branch of the government is as much restrained by the fundamental law of the State in granting power to an integral part of the State, like a city, as the latter is controlled by the legislative grant. Carried to its logical extreme, where is the application of such a power, once conceded, to lead? Under such ordinances, streets are sprinkled in front of vacant lots on which are neither house nor any 'living creature.' It could hardly be said, with reason, that running a sprinkling cart now and then in front of such a lot adds to its market value. Nor is there, in such occasional 'laying of the dust,' any semblance of permanency. It is as evanescent as the early and the later dew, and, in my judgment, it is no more within the power of a municipality thus to create liens on the citizens' property than to hire a 'rain-maker' to vex

the skies for refreshing showers, and charge the lots adjacent to the raindrops with the cost thereof. As the sprinkling of the public highways of a city like the cleaning thereof, contributes much to the comfort and enjoyment of the public, its cost should be made a general, and not a special, burden."

If the question before us is to depend upon the application of the doctrine recognized in most of the cases, viz., that a local assessment can only rest upon a substantial enhancement of values, rather than upon the idea that the public may impose this burden upon the citizen because he is so situated that he can "most promptly and conveniently perform a duty highly salutary and advantageous to the public," a doctrine which is alleged to rest upon the police power of the State, it seems to us that the view taken by the cases last discussed is the correct one. We think it unnecessary to discuss other questions.

The decree is affirmed, with costs, as to complainants Mitchell and Wilson, and reversed as to complainant Stevens, who will take the decree usual on the overruling of a demurrer, with costs of both courts.

McALVAY, C. J., and GRANT, and OSTRANDER, JJ., concurred with HOOKER, J.

CARPENTER, J. The legislature empowered defendant's common council—

"To provide by ordinance for the   *   *   *   sprinkling of any of the streets of said city   *   *   *   by the city or by contract, and to levy and collect special assessments, to defray the costs and expenses of so doing, and to provide by ordinance the necessary means for carrying out the provisions of this section and the making of the necessary assessment rolls. The amount so assessed shall be a personal charge against the owner or occupant of the premises adjacent to which such sprinkling   *   *   *   is done, and be and remain a lien upon the property until the same is paid." Act No. 539, Local Acts 1903, chap. 7, § 54.

In accordance with this authority defendant's common

149 MICH.—35.

council passed an ordinance providing that the streets which it determined to have sprinkled should be sprinkled by contract, and that the total expense should be levied upon the lots and premises abutting the street so sprinkled "in proportion to the number of feet fronting, abutting or touching on such street." In pursuance of this ordinance Military street in said city of Port Huron was sprinkled and the total amount of said cost assessed upon the abutting property owners. As would be inferred from this statement, no steps were taken to ascertain that the property assessed was benefited, and the owners were given no opportunity to be heard upon that question.

Complainants, whose property — some of which is vacant and some of which is occupied—abuts on said street and is assessed for said sprinkling, bring this suit in equity setting forth the above facts and also averring that their property was not benefited by said street sprinkling, and asking to be relieved therefrom. Defendant demurred to this bill. The cause was heard in the lower court and a decree therein rendered setting aside said assessment on the vacant property and sustaining it on the occupied property. Both parties appeal to this court.

Complainants contend that the proceedings for the levy of this assessment are void because the assessment was not apportioned according to benefits. They rely upon *City of Detroit* v. *Judge of Recorder's Court,* 112 Mich. 588, where it was said: "The sole ground for imposing a part or all of the cost of a public improvement upon one part of a municipality is that the part burdened with the cost receives corresponding benefits which the general public does not receive," and where we held invalid a street-opening law which provided that at least half of the amount required for opening the street should be raised by local assessments, saying:

"It contains no provision which requires the assessment upon the local district to be in proportion to the benefits received. The common council are not required

to determine when they establish the district to what extent it is benefited. The jury are required to assess one-half upon the assessment district, regardless of whether it is benefited to that extent and are clothed with power to assess a larger amount only when they conclude that the benefit exceeds 50 per cent. The legislature has no power to fix an arbitrary percentage of a public improvement to be imposed upon a local assessment district, regardless of the benefits received."

Defendant's counsel contend that the case at bar is not within the principle of the above case, but is within the principle which is applied in paving a street. In such cases it is held that it is competent for the legislature to provide that the entire cost of paving the street shall be borne by the property abutting upon the street in proportion to its frontage. See *Sheley* v. *City of Detroit*, 45 Mich. 431; *Cass Farm Co.* v. *City of Detroit*, 124 Mich. 433, 181 U. S. 396; *French* v. *Paving Co.*, 181 U. S. 324. There is this distinction, however, between those cases and the case at bar. In those cases the legislature itself directed the entire cost of the improvement to be levied upon the abutting property in proportion to frontage. In the case at bar it has not done that. It has simply given the common council of defendant authority to collect the same by special assessments. It cannot be said that this distinction is unimportant. It was recognized by the Supreme Court of the United States in *French* v. *Paving Co.*, by quoting with approval from a former decision of the Supreme Court of the United States (*Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112), as follows:

" It has been held in this court that the legislature has power to fix such a district (assessing district) for itself without any hearing as to benefits for the purpose of assessing upon the lands within the district the cost of a local, public improvement. * * * But when as in this case the determination of the question of what lands shall be included in the district is only to be decided after a decision as to what lands described in the petition will be benefited and the decision of that question is submit-

ted to some tribunal (the board of supervisors in this case), the parties whose lands are thus included in the petition are entitled to a hearing upon the question of benefits and to have the lands excluded if the judgment of the board be against their being benefited. Unless the legislature decide the question of benefits itself, the landowner has the right to be heard upon that question before his property can be taken."

In *Wight* v. *Davidson*, 181 U. S. 384 (this was a case similar to the *Cass Farm Company Case* and decided at the same time), the Supreme Court of the United States, in speaking of *Norwood* v. *Baker*, a former decision reported in the 172 U. S. 269, said:

"There the question was as to the validity of a village ordinance, which imposed the entire cost and expenses of opening a street, irrespective of the question whether the property was benefited by the opening of the street. The legislature of the State had not defined or designated the abutting property as benefited by the improvement, nor had the village authorities made any inquiry into the question of benefits. There having been no legislative determination as to what lands were benefited, no inquiry instituted by the village councils and no opportunity afforded to the abutting owner to be heard on that subject, this court held that the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is to the extent of such excess a taking under the guise of taxation of private property for public use without compensation."

The foregoing quotations are placed in this opinion, not because I regard them as correct statements of the law—for I candidly confess to a conviction that the law upon this subject is not yet settled—but for the purpose of showing the difficulty of bringing this case under the principle of the street-paving cases.

If we concede that the legislature might itself determine that the total expense of sprinkling a street should be assessed upon the abutting property owners in proportion to their frontage (and I make such concession only for the purpose of this opinion) and if we concede that the legislature may delegate this power to a municipality—and

this concession is opposed to the principle declared in the foregoing quotations—the question arises whether in this case the power was delegated. If it was, it would, as already shown, permit a municipality to decide that a landowner is benefited by an improvement without giving him any opportunity whatever of being heard upon the question of benefits. A municipality certainly does not possess that power unless the legislature granted it. See *Detroit Citizens' St.-Ry. Co.* v. *City of Detroit*, 110 Mich. 384 (35 L. R. A. 859). The legislature did not expressly grant it. Was it granted by implication? It was not, unless it is to be implied from the grant of authority " to levy and collect special assessments, to defray the costs and expenses of " sprinkling the street. It is clear that defendant's common council might fully and effectively exercise this authority by proceeding in the usual manner, viz., by apportioning the assessments according to benefits after hearing the parties interested. To make said grant of authority effective it is not, therefore, necessary to infer a grant to the municipality of the unusual and extraordinary power of determining that a landowner is benefited by a public improvement without giving him any opportunity of being heard. Whether such power passed by implication is to be determined by the general rules applicable to the construction of municipal charters. Justice Cooley, in his work on Constitutional Limitations (7th Ed.), p. 271, says:

" The general disposition of the courts in this country has been to confine municipalities within the limits that a strict construction of the grants of powers in their charters will assign to them; thus applying substantially the same rule that is applied to charters of private incorporation. The reasonable presumption is that the State has granted in clear and unmistakable terms all that it has designed to grant at all."

Judge Dillon, in his work on Municipal Corporations (4th Ed), § 91, note 2, says:

" If upon the whole there be fair, reasonable, substantial

doubt whether the legislature intended to confer the authority in question, particularly if it relates to a matter extramunicipal or unusual in its nature, and the exercise of which will be attended with taxes, tolls, assessments, or burdens upon the inhabitants, or oppress them, or abridge natural or common rights, or divest them of their property, the doubt should be resolved in favor of the citizen, and against the municipality."

Under these rules the power under consideration was not granted. It was certainly not granted in clear and unmistakable terms. It is an unusual power for a municipality to possess. This is the first time in the history of this court that a municipality has asserted such a power. Its "exercise will be attended with assessments upon the inhabitants" of the city. And inasmuch as it denies them a hearing upon the question of benefits it "oppresses them and abridges their natural rights." It follows that the proceedings for the levy of the assessment under consideration were fatally defective.

Defendant insists that complainants are not entitled to relief under the rule laid down in *Byram* v. *City of Detroit*, 50 Mich. 56, and other similar cases, where we held that one who stands by and permits public improvements to be made which benefit his property, cannot seek the aid of equity. The doctrine of these cases is not applicable, for it must be assumed, as stated in their bill, that complainants received no benefit from the alleged public improvement.

Complainants are, in my judgment, entitled to full relief.

MOORE, J. (*dissenting*). I do not reach the same result in this case as does Justice HOOKER. His statement of facts is sufficiently full for an understanding of the important question in the case, which I agree with him is whether a statute authorizing a municipal corporation to pass an ordinance, requiring the cost of street sprinkling to be assessed upon the abutting land, in proportion to frontage, is valid. I also agree with him that the author-

ities are very much·divided. He presents in his opinion very fairly the two lines of authorities, but from some of them which give an affirmative answer to the question, I desire to quote more freely than he has done.

Preceding the quotation which he has made from *State v. Reis*, 38 Minn. 371, is the following:

"While the public who travel it are also benefited by having the street sprinkled, yet it requires no argument to show that those who reside or do business on it receive an exceptional and special benefit from abating the nuisance of dust, which is a source not only of discomfort to them, but also of actual pecuniary injury to their household goods or merchandise. Sprinkling a street renders the property fronting on it more desirable, and hence more valuable, for occupancy,—a benefit not shared in by other property."

Following the quotation made by him is the following:

"The only essential elements of a 'local improvement' are those which the term itself implies, viz., that·it shall benefit the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property generally in the city. If it does this—rendering the property more attractive and comfortable, and hence more valuable for use—then it ·is an improvement. That the regular and systematic sprinkling of a street has this effect upon the property fronting on it is a matter of common knowledge. This construction is fully warranted by the definitions of the word 'improvement' given by lexicographers. It has been defined as 'that by which the value of anything is increased, its excellence enhanced, or the like;' or 'an amelioration of the condition of property affected by the expenditure of labor or money, for the purpose of rendering it useful for other purposes than those for which it was originally used, or more useful for the same purposes.' "

In the case of *Village of Carthage* v. *Frederick*, 122 N. Y. 275, the justice speaking for the court uses the following language:

"Chief Justice Shaw, in deciding a case, involving the collection of a penalty imposed for the violation of a municipal ordinance requiring the owners or occupants of

houses bordering on streets to remove the snow from their respective sidewalks within a specified time, used this significant language:

" 'It is not speaking strictly to characterize this city ordinance as a law levying a tax, the direct or principal object of which is the raising of revenue. It imposes a duty upon a large class of persons, the performance of which requires some labor and expense, and, therefore, indirectly operates as a law creating a burden. But we think it is rather to be regarded as a police regulation, requiring a duty to be performed highly salutary and advantageous to the citizens of a populous and closely built city and which is imposed upon them because they are so situated as that they can most promptly and conveniently perform it, and it is laid not upon a few but upon a numerous class, all those who are so situated and equally upon all who are within the description composing the class. * * * Although the sidewalk is part of the public street and the public have an easement in it, yet the adjacent occupant often is the owner of the fee, and generally has some peculiar interest in it and benefit from it, distinct from that which he enjoys in common with the rest of the community. He has this interest and benefit often in accommodating his cellar door and steps, a passage for fuel and the passage to and from his own house to the street. * * * For his own accommodation he would have an interest in cleaning the snow from his own door. The owners and occupiers of house-lots and other real estate, therefore, have an interest in the performance of this duty, peculiar and somewhat distinct from that of the rest of the community. Besides, from their situation, they have the power and ability to perform this duty with the promptness which the benefit of the community requires and the duty is divided, distributed and apportioned upon so large a number that it can be done promptly and effectually and without imposing a very severe burden upon any one.' *In re Petition of Goddard,* 16 Pick. (Mass.) 504, 509, 516.

"In a recent case this court, referring to the police power, said:

" 'That power is very broad and comprehensive, and is exercised to promote the health, comfort, safety, and welfare of society. * * * Under it the conduct of an individual and the use of property may be regulated so as to interfere, to some extent, with the freedom of the one and the enjoyment of the other.' *In re Jacobs,* 98 N. Y. 98, 108.

"And in another case the court declared that 'all property is held subject to the general police power of the State,

to so regulate and control its use in a proper case, as to secure the general safety and the public welfare.' *People v. Gillson,* 109 N. Y. 389, 398.

"In both of the cases last referred to, the police power was distinctly recognized, but it was held that a statute, to be sustained as an exercise of that power, must have some relation to the public health, comfort or safety, and that the rights of property could not be invaded under the guise of a police regulation for the protection of health, when it was manifest that such was not the object of the regulation.

"The following authorities, some expressly and others in principle, justify the passage of the ordinance in question as a proper exercise of police power, lawfully delegated to a municipal corporation by the legislature: *People v. Mattimore,* 45 Hun (N. Y.), 448; *Mayor, etc., of New York v. Williams,* 15 N. Y. 502, 505; *Phelps v. Racey,* 60 N. Y. 10; *Cronin v. People,* 82 N. Y. 318; *Moore v. Gadsden,* 93 N. Y. 12, 17; *Dixon v. Railroad Co.,* 100 N. Y. 176, 179; *People v. Arensberg,* 105 N. Y. 123; *Vanderbilt v. Adams,* 7 Cow. (N. Y.) 349; *Coates v. Mayor, etc., of New York,* 7 Cow. (N. Y.) 585, 606; *Stokes v. New York,* 14 Wend. (N. Y.) 88; *Sharpless v. Mayor, etc., of Philadelphia,* 21 Pa. 147; *Beer Co. v. Massachusetts,* 97 U. S. 25, 33.

"If this power of local legislation can be conferred upon the largest city in the State, it can also be conferred upon the smallest village that the legislature sees fit to incorporate. In this latitude the accumulation of snow upon sidewalks in large quantities is a matter of course. Its presence retards travel, interrupts business, and interferes with the safety and convenience of all classes. It is a frequent cause of accidents and thus affects the property of every person who is liable to assessment to pay the damages caused by a failure to remove it. But how is it possible for the authorities of a large city, with many hundred miles of streets, to remove the snow in time to prevent injury to those who have the right to travel upon the sidewalks unless they can require the owners and occupants of adjacent property to remove it? Every man can conveniently and promptly attend to that which is in front of his own door, and it is both reasonable and necessary that he should be compelled to do so. We think that the ordinance under consideration is valid; that it conflicts with no provision of the constitution, and that it is the duty of the courts to enforce it."

In the case of *Sears* v. *City of Boston*, 173 Mass. 71 (43 L. R. A. 834), the following language is used in the opinion:

"This is a petition for a writ of certiorari to quash alleged illegal assessments laid to meet the cost of watering streets in the city of Boston under Stat. 1897, chap. 419. The first and most important question in the case is whether this statute is constitutional. The right of the legislature to raise money by taxation is founded upon article 4, chap. 1, § 1, of the constitution of the Commonwealth. Under this article there is authority 'to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise, and commodities,' etc. This authority we need not consider in the present case. Secondly, there is authority 'to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of and persons resident and estates lying within the said Commonwealth.' The watering of streets in thickly settled portions of cities is such a public benefit that it legitimately may be provided for at the public expense. So far as it promotes the comfort, convenience, and prosperity of the people generally, as distinguished from landowners, it should be provided for by general taxation, which involves the assessment of proportional and reasonable taxes upon all persons and property within the city. The statute purports to authorize every city, not only to 'appropriate money for watering the public ways, or portions thereof, within its limits at the expense, in whole or in part, of the city,' but also to 'determine that certain other public ways or portions thereof shall be watered at the expense, in whole or in part, of the abutters thereon. Stat. 1897, chap. 419, § 1. This last provision calls for another kind of taxation, which is local and special. Such taxation, under the constitution, can only exist when there is a special or peculiar benefit to certain real estate, different from that which is received by the inhabitants generally. The owners of the land upon which such an assessment is made must pay the same share of the general taxes in proportion to the value of their property that other persons pay. As the constitution requires that taxes shall be proportional and reasonable, this additional special tax can be justified only when there is a special benefit to property from the expenditure on account of which the assessment is made. *Wright*

v. *City of Boston*, 9 Cush. (Mass.) 233, 234; *Dorgan*
v. *City of Boston*, 12 Allen (Mass.), 223, 237; *Mount
Auburn Cemetery* v. *Cambridge*, 150 Mass. 12, 14 (4 L.
R. A. 836); *Norwood* v. *Railroad Co.*, 161 Mass. 259,
264; *City of Boston* v. *Railroad Co.*, 170 Mass. 95;
*Norwood* v. *Baker*, 172 U. S. 269; *Stuart* v. *Palmer*,
74 N. Y. 183, 189; *Sharp* v. *Speir*, 4 Hill (N. Y.), 76,
82; *Hammett* v. *Philadelphia*, 65 Pa. 146, 157; *Tide-
water Co.* v. *Coster*, 18 N. J. Eq. 518, 527; *City of
Norfolk* v. *Chamberlain*, 89 Va. 196, 213; *Nichols* v.
*City of Bridgeport*, 23 Conn. 189; *Thomas* v. *Cain*, 35
Mich. 155, 162; *Taylor* v. *Palmer*, 31 Cal. 240, 254;
*Sheehan* v. *Good Samaritan Hospital*, 50 Mo. 155.
In the last analysis the assessment is not laid as a part of
the burden of public expenditure put upon the land; for
the burdens which are strictly public are to be shared
proportionally by all the people, according to the value of
their taxable property.   It is rather in the nature of a
diminution of that which at first is a public burden, by
subtracting from it the amount of the special enhancement
of value of private property from the expenditure of pub-
lic money in part for its benefit.  It is taxation in the
sense that it is a distribution of that which is originally a
public burden, growing out of an expenditure primarily
for a public purpose.

   " It is a grave question whether the benefit that comes
to abutting property from the watering of the street in
front of it is such an improvement to the property that it
can be made the subject of an assessment upon it.   There
must be a real substantial enhancement of value growing
out of a public work to warrant an assessment of special
taxes upon particular estates on account of it.   The
watering of streets produces only transitory effects, and
makes no permanent change in the condition of the prop-
erty.   It greatly promotes the health and comfort of the
people generally, who use the streets from time to time,
but its greatest benefit is to the abutting estates as places
for residence or the transaction of business.   Indeed, so
much more important to the occupants than to the gen-
eral public have been the benefits from watering streets
that until lately the expense of the work in this Common-
wealth has usually been borne by the abutters, who have
procured the watering to be done by private contractors.
If a special benefit, accruing from day to day, which very
materially increases the rental value of real estate by rea-

son of the proximity of the property to the place where the beneficial work is done, can be treated as an improvement within the reason of the rule which permits special assessments, then such assessments may be made to pay the expense of watering streets. With some hesitation, we hold that there is an improvement of private property, when this work is done by a city regularly from day to day, which may warrant an assessment upon the abutters. It was so held in *State* v. *Reis*, 38 Minn. 371, and in *Reinken* v. *Fuehring*, 130 Ind. 382 (15 L. R. A. 624), although the cases generally which uphold such assessments relate to improvements of a permanent character. Many improvements from which real estate receives an incidental advantage are held to justify only general taxation. *Hammett* v. *Philadelphia*, 65 Pa. 146; *Washington Avenue*, 69 Pa. 352; *City of Erie* v. *Russell*, 148 Pa. 384, 386; *Dyar* v. *Village of Farmington*, 70 Me. 515, 527; *State* v. *Chamberlin*, 37 N. J. Law, 388; *Dietz* v. *City of Neenah*, 91 Wis. 422, 427."

I do not make reference to the cases which hold such a statute is not valid, for the reason that they are very fully referred to in the opinion of Justice HOOKER.

It must be conceded that in principle the case at bar cannot be distinguished from those where the lot owner is required to keep his sidewalk free from mud, snow, and slush. It is a matter of common knowledge that the several charters granted to cities and villages in this State confer upon the common councils of said municipalities the right to pass ordinances of the character just mentioned. It is also a matter of common knowledge that the legislature has conferred upon municipalities the right to pass ordinances like the one now under consideration, and that ordinances of like character have been in effect in many cities and villages in this State for many years.

We think it also a matter of common knowledge that people who can afford it will not willingly reside in a residential district where the streets are not sprinkled during our hot and dusty summers; nor would one willingly engage in retail trade upon such a street. If the property owner desired to rent his property so situated he would receive a larger rent than he would if it was understood

the streets in that district were to remain unsprinkled. This would be equally true did he desire to sell.

We think it very clear a real estate dealer would find that a lot in a residential district or in a retail business center would sell more readily and for a better price, if he could assure a prospective buyer that the street upon which it abutted would be kept sprinkled during the hot and dusty summer, than if he was obliged to say to him it would not be sprinkled.   It would also be found that the increased value of the lot would not be disproportioned to the amount levied upon the property to pay for the sprinkling.   The tax is levied not for sprinkling one day simply, but for the season.   The tax levied is small.   It amounts to only about ten cents a foot front for the entire season.   The sprinkling of the street appreciably increases the comfort of the occupants of the property, and as before stated increases its rental value as well as its sale value.   2 Cooley on Taxation (3d Ed.), p. 1,178 et seq.

As the question is a new one in this State, and as ordinances of like character are almost universal in our cities and villages, and in many of them have been acted upon for years, and as there is abundant authority from very respectable courts holding like ordinances valid, and as the opinions so holding seem to be logical, I think we should follow them rather than the other line of cases. The parties having delayed until the service was fully rendered are concluded from attacking the proceedings on technical grounds under *Byram* v. *City of Detroit,* 50 Mich. 56.

The decree should be affirmed as to complainant Stevens, with costs, and should be reversed as to complainants Mitchell and Wilson, with costs.

BLAIR, and MONTGOMERY, JJ., concurred with MOORE, J.