CASE 17—PETITION EQUITY—JANUARY 10.

# Broadway Baptist Church *et al.* v. McAtee and Cassily, &c.

### APPEAL FROM THE LOUISVILLE CHANCERY COURT.

1. THE COST OF ORIGINAL CONSTRUCTION AND RECONSTRUCTION OF STREETS OF A CITY may be imposed upon the owners of adjacent real estate.

2. THE LAW-MAKING POWER DETERMINES WHAT ARE THE PROPER SUBJECTS OF GENERAL OR LOCAL TAXATION, and it is not within the province of the courts to abridge this legislative prerogative, nor to refuse their assistance in carrying out the legislative will, on account of doubts as to the policy or justice of the enactment through which it may be imposed.

3. *When the subjects of taxation have been determined* then the constitutional limitation requiring equality and uniformity in its imposition upon such subjects applies, and the courts are bound to see that this limitation is not disregarded.

4. *Streets shall be improved* " *at the exclusive cost of the owners of lots in each fourth of a square*, to be equally apportioned by the general council according to the number of square feet owned by them respectively, except that corner lots . . . shall pay twenty-five per cent. more for said improvements." This provision of section 12 of the charter of the city of Louisville is sanctioned and enforced in this case.

5. *What is deemed a "square" as used in said section* 12?

    " Each subdivision of territory bounded on all sides by principal streets should be deemed a square." ·

    " Each one fourth of such subdivision should be subjected to the cost of constructing and reconstructing the streets and alleys binding thereon."

Broadway Baptist Church *et al.* v. McAtee and Cassily, &c.

6. *The right of lot-owners to make the improvements,* for the cost of which they were bound by public contract, was waived by failing to speak when it was their duty to do so.

7. ORDINANCES PROVIDING FOR THE CONSTRUCTION OR RECONSTRUCTION OF PUBLIC WAYS are not embraced by the provisions of section 67 of the charter. But if they were, the error in failing to vote upon such ordinances, on two different days, is one which comes within the provision of section 12, that

"*No error in the proceedings of the general council shall exempt from payment* after the work has been done, . . . and in no event shall the city be liable," etc.

8. *The general rule of construction is* that the authority delegated to municipal corporations is to be strictly construed, and must be closely pursued. (Sedgwick on Statutory and Constitutional Law, 466.)

But the sovereign power that delegates this authority may change or abrogate this rule of construction; and

As to the improvement of public ways in Louisville, and the assessment of taxation to pay the cost thereof, this rule of construction is abrogated by said section 12.

9. *The legislature, having the power to impose the taxation,* can not be restricted in determining the mode of its collection.

This construction will not enable the city, in any case, to extort from the property-owners, under the guise of taxation, more than the value of the property subjected directly to the tax.

10. CHURCH PROPERTY may be required to pay its proper proportion of the cost of the construction and reconstruction of streets in the city of Louisville.

11. *Exemptions made by general laws in favor of church property* apply only to taxation for the general purposes of government, state, county, and municipal. (Lockwood v. City of St. Louis, 24 Mo. 20; 11 Johnson, 77; 13 Pennsylvania, 107.)

ANDY BARNETT,
I. W. EDWARDS,
J. HARDING, . .　　. . . . . . . . For Appellants,
R. J. ELLIOTT, .

CITED

Am. Law Reg., July, 1869, page 415, Hamett v. Philadelphia.
New Charter of the City of Louisville, secs. 12, 68, 69, 70, 81, 14.
98 Massachusetts, 583, Tufts v. Charleston.
35 California, 441, Himmelman v. Danos.
28 Indiana, 347, McEntire v. Brown.
36 California, 239, Measer v. Risdom.

Broadway Baptist Church *et al.* v. McAtee and Cassily, &c.

7 American Law Register, 143 (N. S.), Dean v. Charlton.
8 Bush, 300, Garrard County Court v. Ky. River Navigation Co.
9 Dana, 573.            5 Dana, 28.
4 New York, 419.            10 Ohio, 165.
5 Ohio, 246.            21 Louisiana, 142.
34 California, 310, Smith v. Cafron.
44 Barbour (N. Y.) 46, *In re* Terfler.
21 Wisconsin, 247, Knox v. Peterson.
17 Wisconsin, 443, Myrick v. LaCrosse.
21 Wisconsin, 184, Johnson v. Oshkosh.
21 Iowa, 57, Des Moines v. Cassiday.
47 Missouri, —, Leslie v. St. Louis.

MUIR & BIJUR, . . . . . . . . For Appellees,

T. L. BURNETT, . . . . . . . . For City of Louisville,

CITED

Charter of City of Louisville of 1870, secs. 7, 12, 67, 108, 126.
Elliott's Laws and Ordinances of Louisville, 350, 406, 407.
Newman's Pleading and Practice, 453.      4 Barbour, 620.
5 J. J. Marshall, 125.            7 J. J. Marshall, 459.
7 Bush, 41.                  4 Bush, 470.
1 Marshall, 115.            35 Barbour, 604.
7 Bush, 667–69, Bradley v. McAtee, &c.
5 Bush, 520, Henderson v. Louisville.
29 California, 83, Emery v. Bradford.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

This court adheres to the opinion delivered in the case of Bradley v. McAtee, &c. (7 Bush, 667); it is therefore unnecessary to discuss the constitutionality of the tax assessed against these appellants to pay portions of the cost incurred in the reconstruction of Broadway street with Nicolson pavement, in so far as it is claimed that the imposition of such tax impairs the obligations of contracts.

The 12th section of the charter of 1870 places the public ways of the city of Louisville under the exclusive control of the general council, with power to improve them by original construction and reconstruction. It provides that such improvements "shall be done as may be prescribed by ordinance,

at the exclusive cost of the owners of lots in each fourth of a square, to be equally apportioned by the general council according to the number of square feet owned by them respectively, except that corner lots (say thirty feet front and extending back as may be prescribed by ordinance) shall pay twenty-five per cent. more than others for said improvements. A lien shall exist for the cost of improvements of public ways, for the apportionments and interest thereon, against the respective lots; and payments may be enforced as other city assessments for taxes upon the property bound therefor, or by proceedings in court; and no error in the proceedings of the general council shall exempt from payment after the work has been done as required by ordinance or contract; but the general council, or the courts in which suits may be pending, shall make all corrections, rules, and orders to do justice to all parties concerned; and in no event shall the city be liable for such improvements without having the right to enforce it against the property receiving the benefit thereof," etc.

It is certainly well settled in this state that the cost of the original construction of the streets of a city may be imposed upon the owners of real estate alone, without violating the constitutional limitations upon the legislative power of taxation. We can perceive no sufficient reason why the cost of the reconstruction of such streets may not also be assessed against the owners of the same character of property. In proportion as the trade and population of a city increase the value of real estate advances. The owners of such estate receive and enjoy very nearly the sole permanent advantages accruing to the city from the construction, repairs, and reconstruction of the streets upon which their property may be situated. The general public certainly receives incidental benefits from such improvements; but the benefits to the owners of real property are direct, appreciable, and permanent. The

original improvement ‘enhances the value of lots adjacent to the street improved by making it accessible to the public, and attracting trade and population. This enhanced value can be preserved in no other way than by keeping the street in repair, and by its reconstruction when too much worn to be longer repaired. Hence, so far as the right to impose this local taxation depends upon the enjoyment by the persons taxed of peculiar local benefits arising therefrom, it seems to us that there is no substantial difference between the reconstruction and the original improvement of the street.

We are not aware that this question has been directly presented to this court for adjudication in any other case than this; but it has been incidentally involved in several cases heretofore decided, and in no instance has it been intimated that the principle authorizing the tax for the one purpose does not apply equally to the other.

In the case of City of Covington v. Boyle, &c. (6 Bush, 204) the assessments against the lot-owners were for the cost of repairing and reconstructing certain streets in that city, and such assessments were held valid, and adjudged to be enforceable. The reasoning of the Supreme Court of Pennsylvania in the recent case of Hamett v. City of Philadelphia (July number, 1869, Law Register) is to some extent antagonistic to this conclusion. But in that case the improvement was not made to bring or keep the street, as all other streets in the built-up portion of the city were kept, for the advantage and comfort of those who lived upon it, and for ordinary business and travel; but to make a great public drive, a pleasure-ground, "along which elegant equipages may disport of an afternoon." Under such circumstances to have compelled a small number of persons owning property in the vicinity of such public pleasure-ground to pay the entire cost of its construction would have been manifestly and palpably a spoliation under the forms of law, and that this fact exer-

·cised a controlling influence with the court can be readily gathered from the opinion.

. It may be conceded, as was held by that court, that when a street has been improved and assimilated with the rest of the city, and made a part of it, that it is the duty of the municipality, for the general good, to keep it in repair, and when necessary to reconstruct it. But still the important question remains to be determined, how the expense incurred in the performance of this duty is to be paid? Shall a portion of the general revenues of the city be applied to the payment of such expense, or may the sovereign power impose the burden upon that character of property which will be directly and permanently benefited by the expenditure?

In the imposition of this or of all other taxation a broad field is of necessity left open to legislative discretion. Public policy may, and in some cases does, demand that certain kinds of property shall be exempted from all taxation.

The law-making power has always exercised the right, without question, of determining the proper subjects either of general or local taxation, and we conceive that it is not within the province of the courts to abridge this legislative prerogative, nor to refuse to lend their assistance in carrying out the legislative will on account of doubts as to the policy or justice of enactments through which it may be expressed. When the subjects of taxation have been determined, then the constitutional limitation requiring equality and uniformity in its imposition upon such subjects applies, and the courts are bound to see that this limitation is not disregarded.

It is objected that the rule prescribed by the charter of the city for subdividing its territory into subordinate communities for the purposes of street taxation is uncertain and indefinite, and that it can not be so applied as to secure even approximately that equality and uniformity contemplated by the organic law. The streets are to be improved "at the exclu-

sive cost of the owners of lots in each fourth of a square, to be equally apportioned by the general council according to the number of square feet owned by them respectively, except that corner-lots . . . . . . . shall pay twenty-five per cent. more for said improvements."

An examination of a map of the city on file with the record shows that the principal streets do not generally divide the city into exact squares. In most instances such subdivisions have sides of unequal length, and in some cases the streets do not run at right-angles the one with the other, and therefore occasionally portions of territory bounded on all sides by principal streets have but three sides.

It is not to be assumed that the legislature intended that the term " square " as used in the twelfth section of the charter should be held to mean a figure with four sides of equal length, and confined in its application to subdivisions of the city coming within that restricted definition ; but rather that each subdivision of territory bounded on all sides by principal streets should be deemed a square, and that the real property constituting each one fourth of such subdivision should be subjected to the cost of constructing and reconstructing the streets and alleys binding thereon. The general council in apportioning the cost of the improvement of Broadway street between First Street and Brook Street so construed the act, and made the apportionment in accordance with this theory. It is not to be concealed that difficulties will attend the application of this rule to many portions of the city, and we apprehend that its application will not result in securing exact equality and uniformity of street taxation ; but still we are not prepared to decide that the delegated powers are outside of the " well-defined limits within which the practical equality of the constitution may be preserved."

It may well be doubted whether the general council did not err in failing to give the property-owners an opportunity

of having the improvement made by private contract. But the ordinance under which the work was done was a matter of public record, and every citizen or property-holder to be affected had constructive notice of its adoption, and from the time the contractor commenced work it may be assumed that the appellants had actual notice not only of the ordinance, but of the contract under which the work was being done. It does not appear that either of them labored under any legal disability. If it was their intention to rely upon this alleged error as a defense to the claims the contractor would have against them for the assessments provided for by the ordinance to pay the cost of the improvement, it was their duty to have notified them of such intention. Under the circumstances presented it is peculiarly proper that the provision of the charter, to the effect that "no error in the proceedings of the general council shall exempt from payment after the work is done as required by ordinance or contract," should be applied to them. By failing to speak when it was their duty to do so they must be held to have waived the right, intended to be secured to them by the charter, of making the improvements for the cost of which they were bound, by private contract.

We are of opinion that ordinances providing for the construction or reconstruction of public ways at the cost of property-owners are not embraced by the provisions of the sixty-seventh section of the charter. But if they were, the error in failing to vote upon the ordinance under which this improvement was made, on two different days, is one which comes within the curative provision of section 12, just referred to. Ordinances providing for the improvements of streets, under the peculiar provisions of the charter of Louisville, are not void merely because the general council fails to follow strictly its delegated powers. Under the general rule of construction, the authority delegated to municipal corporations is

to be strictly construed, and must be closely pursued. (Sedgwick on Stat. and Con. Law, 466; Kniper v. City of Louisville, 7 Bush, 599.) But the sovereign power that delegates this authority may, when it sees proper, change or abrogate this rule of construction.

So far as the improvement of public ways in Louisville and the assessment of taxation to pay the cost thereof are concerned, this rule is abrogated, and a different one prescribed by the provision in question. The general council is invested with legislative discretion in determining when and in what manner a particular street shall be improved, but in apportioning the cost of the improvement among those persons bound to pay such cost, as well as in accepting the contract under which it is to be made, its action is ministerial, and made subject to judicial revision when tainted with fraud, or when it is necessary for the correction of errors.

The council procures the improvement to be made, and the legislative enactment, to which the municipality owes its existence, unaided by any municipal ordinance, imposes upon the property-owners the duty of paying their proper proportions of the expense thereby incurred.

The ordinance of July 14, 1869, would have been a valid and perfect ordinance if no mention had been made of the fact that the cost of the improvement was to be paid by the property-owners. They are subjected to this burden by the city charter, and not because of what the general council saw proper to ordain. Street improvements, under the charter, must be made "at the exclusive cost of the owners of lots in each fourth of a square;" "and in no event shall the city be liable for such improvements without having the right to enforce it against the property receiving the benefit thereof."

The contract under which the work was done substantially conforms to the ordinance. The intersection is paid for by the city, and we are not satisfied that in making the contract

by the square the intersections could have been properly excluded.

The evidence presented does not show that the general council abused its discretion in procuring the improvement to be made, nor that the contractors did not in good faith keep and perform the conditions and stipulations of their undertaking. Upon this last question there is some contrariety of evidence, but the preponderance of the testimony is certainly in favor of the conclusion reached by the chancellor.

The ordinance did not vest the city engineer with legislative powers, but only with a reasonable and proper discretion.

The prayer of the petition is broad enough to authorize personal judgments against the appellants, if under the law the court had power to render such judgments.

A careful consideration of the language of the act inclines us to the conclusion that the assessments are to be made against the owners of the lots, and that the lien is given to secure the payment of the tax. The 64th section of the charter gives the city a similar lien upon all property taxed for purposes of general revenue. The policy of such legislation is a question into which we have no right to inquire. The legislature, having the power to impose the taxation, can not be restricted in determining the mode of its collection; nor will this construction enable the city, in any case, to extort from the property-owners, under the guise of taxation, more than the value of the property subjected directly to the tax.

The power to impose this character of taxation must, to some extent, depend upon the fact that the persons taxed are correspondingly benefited by the expenditure thereof. The courts would hesitate to interfere in cases in which it may be a question of doubt as to whether the persons taxed receive commensurate benefits; but where the taxation is so excessive as to render it doubtful whether the property to be benefited will suffice to pay the assessments against it they can no longer

be deemed taxation.　To enforce their collection would be the exercise of absolute and arbitrary power over the property of the citizen—a power which, under our form of government, does not exist, even in the largest majority.　Whenever such a case may arise the courts will be prompt to afford protection.

We are of opinion that church property can be subjected to the payment of this tax.　The terms of the charter leave no doubt that such was the intention of the legislature.　It is explicitly enacted that the cost of street improvements shall be exclusively borne by the owners of lots, and that no one is to "be assessed or charged with the improvement of public 'ways except those binding on the fourth of a square of which his lot forms a part, *apportioned as aforesaid;*" that is, in the proportion the number of square feet of each lot bears to the number of square feet embraced in the one fourth of the square against which the assessment may be made, corner lots paying twenty-five per cent. more than others.　Such a rule of apportionment necessarily subjects all the lots in the tax district to the burden, and church property can not be exempted therefrom without doing violence to language the meaning of which does not admit of question.　The exemptions made by the general laws in favor of such property apply only to taxation for the general purposes of government, state, county, and municipal.　(Lockwood v. City of St. Louis, 24 Mo. 20 ; 11 Johnson, 77 ; 13 Penn. 107.)

The description of the property decreed to be sold is sufficiently specific to enable the court's commissioner to enforce its judgment.

We are of opinion that the record presents no error warranting a reversal of the judgment of the chancellor; wherefore such judgment must be affirmed.