NEW YORK LIFE INS. CO. v. PREST et al.

(Circuit Court, W. D. Missouri, W. D.  January 27, 1896.)

TAXATION—SPECIAL ASSESSMENTS—SPRINKLING STREETS.

> Sprinkling the streets of a city is not an improvement of the abutting property of such a character as to justify the imposition upon such abutting property of a special assessment for the expense thereof, and an act authorizing the imposition of assessments for such purpose is in violation of fundamental law, and not within the taxing power.

Austin & Austin, for complainant.
Wash. Adams, for defendants.

PHILIPS, District Judge.  This is a bill to foreclose a mortgage on certain real estate situated on Grand avenue in Kansas City, Mo.  Among the conditions of the mortgage is one requiring the mortgagor "to keep said premises free from all statutory lien claims of every kind, and to pay, before the same becomes delinquent, all taxes and assessments on said property, general and special, then existing, or that might thereafter be levied." It is alleged, inter alia, that, under an ordinance of said city, adopted pursuant to the city charter, said real estate was assessed with certain sums to pay for the sprinkling of the driveway on said street.  It is then alleged

that, the mortgagor having failed to pay said assessment, the mortgagee paid the same, and which said sum it seeks to enforce as a lien against the mortgaged property. To this bill the respondent purchasers of this property under the mortgagor interpose a general and special demurrer, the special demurrer going to the averments respecting said special tax.

The charter of the city (article 9, § 22) provides that:

"The city may cause any street, avenue or public highway or part thereof, to be cleaned or sprinkled, and the cost thereof paid out of the money collected on special taxes, or assessments against the land fronting on such street, avenue, etc., on which such work may be done, according to the frontage of such land on the street, avenue or public highway."

The grant by the state to this municipality, and the power of taxation, are in subordination to the limitations and conditions imposed by the fundamental law,—the constitution of the state. Section 16, art. 9, of the state constitution provides that cities having a population of more than 100,000 inhabitants may frame charters for their own government, consistent with and subject to the constitution and laws of this state. Article 10 treats of the subject of "Revenue and Taxation." Section 1 declares that:

"The taxing power may be exercised by the general assembly for state purposes and by counties and other municipal corporations, under authority granted to them by the general assembly for county and other corporate purposes."

Section 3 declares that:

"Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws."

It has been held by the appellate courts of the state that, while the foregoing provisions of the constitution of 1875 make no reference to the matter of special assessments for the improvement of property on the streets of the city, under municipal regulations, it was not the intention of the convention to take away this power, so long exercised by cities. Adams v. Lindell, 5 Mo. App. 198, affirmed 72 Mo. 198. The court distinguishes between taxation proper, for purposes of general revenue, and special assessments. The latter are held to be imposed in reference to local improvements, having in view benefits to the property upon which they are assessed, and form a peculiar exercise of the general taxing power. The sole foundation for the exercise of this extraordinary power, so often pressed to the utmost verge of toleration by these municipal governments, rests on the fact or assumption that it operates in the nature of conferring a practical, permanent benefit upon the property itself, independent of any fancy, whim, or caprice of the occupant. The term, "local improvements," on which the power asserted by this city charter is buttressed, had, at the time of the legislative grant, a well-known and sharply-defined meaning in law. As applied to a street, it meant the improvement of a street, as such, within the design of its creation, "by reason of which the real property abutting or adjacent was especially benefited in its market

value." Cooley, Tax'n, 109, 110; Dill. Mun. Corp. 596, 597. Its exercise is inseparable from the idea and purpose of permanency, and must be of that character which, presumptively, works out an enhancement of the market value of the property assessed. Kankakee Stone & Lime Co. v. City of Kankakee, 128 Ill. 176, 20 N. E. 670. The supreme court of Missouri manifestly entertains the same view. In Neenan v. Smith, 50 Mo. 529, the court says:

"Local taxes for local improvements are merely assessments upon the property benefited by such improvements, and to pay for the benefits which they are supposed to confer. The lots are increased in value, or better adapted to the uses of town lots, by the improvement. Upon no other ground will such partial taxation stand."

This is reasserted by the court in St. Louis v. Allen, 53 Mo. 44, and the same view of the underlying principle runs like a thread of gold through the discussion in State v. Leffingwell, 54 Mo. 458. On page 477 the court sums up the whole doctrine:

"Private property cannot be taken for public use without a just compensation. Special benefits cannot form any part of such benefits, unless they attach to and become a part of the taxed property."

Without such test, Judge Wagner very aptly declares that "the time will probably come when it will be deemed advisable to provide statuary and other costly adornments for the park." Black, P. J., in City of Clinton v. Henry Co., 115 Mo. 569, 22 S. E. 494, speaking on this subject, said:

"These cases hold that local assessments can be upheld, alone, on the ground of compensation in benefits to the particular property assessed."

This precise question has been considered and determined by the supreme court of Illinois in City of Chicago v. Blair, 149 Ill. 310, 36 N. E. 829. While it is to be conceded that, in some other jurisdictions, the contrary view has been expressed, the reason and authority of the Illinois court commands my entire approval. It holds that such an assessment as practiced by the city for street sprinkling was violative of fundamental law, because it is not predicable of an improvement—a betterment— of the adjacent property. After showing that sidewalks and grading and paving of the streets do, in the experience of men, enhance the market value of contiguous lots, with pungent force the court observed:

"It is, however, insisted that the sprinkling of the streets during the summer months renders the occupation of adjacent property more enjoyable and comfortable, and that, therefore, the property is enhanced in value. Doubtless, the same result would follow by placing vases at convenient points on the street, to be filled every morning with fresh-cut flowers, or by open air concerts, in which music should be selected with reference to the taste of the adjacent dwellers. So the employment of an efficient police force, whereby greater safety was felt, would add to the enjoyment and comfort of persons residing upon the street. The proper watering and clipping of the grass upon the lawn and terrace, the removal of garbage from the premises, besides saving expense to the occupant, would add to the enjoyment, and possibly the healthfulness, of the locality. These all might be improvements, and increase, while they continued, the desirability of property in their locality. But they are not improvements, either of the property or of the street, within the legislative contemplation when granting power to make local improvements by special assessment."

It is true the court was there demonstrating that the ordinance in question was not reasonably within the terms of the statute authorizing special assessments. But the legislative branch of the government is as much restrained by the fundamental law of the state in granting power to an integral part of the state, like a city, as the latter is controlled by the legislative grant. Carried to its logical extreme, where is the application of such a power, once conceded, to lead? Under such ordinances, streets are sprinkled in front of vacant lots on which are neither house nor any "living creature." It could hardly be said, with reason, that running a sprinkling cart now and then in front of such a lot adds to its market value. Nor is there, in such occasional "laying of the dust," any semblance of permanency. It is as evanescent as the early and the later dew, and, in my judgment, it is no more within the power of a municipality thus to create liens on the citizen's property, than to hire a "rain maker" to vex the skies for refreshing showers, and charge the lots adjacent to the raindrops with the cost thereof. As the sprinkling of the public highways of a city, like the cleaning thereof, contributes much to the comfort and enjoyment of the public, its cost should be made a general, and not a special, burden. So much of the demurrer as goes to the lien claimed on account of the street sprinkling is sustained, and overruled as to the other portions of the bill.