CASE 70.—ACTION BY THE CITY OF OWNESBORO AGAINST
JAMES J. SWEENEY TO ENFORCE A LIEN FOR
SPECIAL ASSESSMENTS FOR STREET SPRINK-
LING.—June 17, 1908.

# City of Owensboro v. Sweeney

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

From a judgment of dismissal on demurrer to the
petition plaintiff appeals—Affirmed.

1. Taxation—Uniformity—Equality.—Under the Constitution, de-
claring that taxes shall be uniform on all property subject to
taxation within the territorial limits of the authority levying
the tax and shall be assessed at a fair cash value, the
fundamental theory on which all poperty taxes are imposed
is that the property shall contribute in proportion to its
value, and thus bear as near as may be its equal share of
the burden.

2 Municipal Corporations—Special Taxes for Local Improvements
—Validity.—A municipality may levy a tax on the abutting
land for a local impovement and the tax may be assessed
according to the frontage of the property without regard to
its value; the constitutional provisions relating to equality
and uniformity of taxation not being applicable to special
taxes.

3. Same.—Special taxes cannot be levied by a municipality unless
the property charged receives a corresponding physical, ma-
terial, and substantial benefit therefrom.

4. Same.—The sprinkling of streets does not confer a special
benefit on adjacent property in the sense of contributing
to its value, and a special tax for such purpose cannot be
sustained, and Act March 21, 1906 (Laws 1906, p. 276, c. 94),
authorizing the common council of cities to provide for sprink-
ling the streets and to assess the cost thereof by front foot
against the property abutting on the streets, is invalid.

City of Owensboro v. Sweeney.

GEORGE W. JOLLY for appellant.

### STATEMENT OF QUESTIONS DISCUSSED.

1. Constitutional Law. The Act of March 21, 1906, (Acts 1896, p. 376, ch. 94) authorizing assessments of abutting lots on streets to pay the cost of sprinkling the streets in front thereof and making assessment a lien on the lots is not in violation of the constitution of this State. (Gosnell v. Louisville, 104 Ky., 213.)

2. The Front Foot Rule.—Apportionment of the cost of sprinkling the street against abutting lots by the front foot is not a violation of any provision of the constitution. (Lexington v. McQuillan's Heirs, 9 Dana, 514; Louisville v. Hyatt, 2 B. Mon., 177; Covington v. Boyle, 6 Bush, 204; Covington v. Worthington, 88 Ky., 206; Marshall v. Barber Co., 23 Ky. Law Repporter, 1971; Cooley on Taxation (3rd Ed.), 1217 to 1223; 25 A. & E. Ency. Law, 1183, 1201; Dillon on Mun. Corp. 752 to 761; Hamilton on Special Assessments, 219 to 226; Parsons v. District of Columbia, 170 U. S., 45.)

3. Street Sprinkling is a Public Purpose.—Sprinkling streets is a public purpose for which taxes may be levied; and inasmuch as the abutting property receives a special benefit in addition to that enjoyed therefrom by the general public, the cost thereof may be assessed against such abutting property. (Maydwell v. Louisville, 116 Ky., 885; State v. Reis, 38 Minn., 371; Sears v. Boston, 173 Mass., 71; Philips Academy v. Andover, 175 Mass., 118; Reinken v. Fuering, 130 Ind., 382; Carthage v. Frederick, 122 N. Y. 268; Goddard, Petitioner 16 Pickering, 504.)

4. Ordinance for street sprinkling valid. Third class cities under sections 3290, subsection 7, and 3438 had power to provide for sprinkling streets and were not required to sprinkle all in the city, prior to the passage of the act of March 21, 1906, and an ordinance creating a sprinkling district before the act went into effect was valid, and an ordinance making an assessment, to pay the expense thereof, on the abutting property per front foot, after the act went into effect was valid.

5. Assessments spring out of taxing power. The power to make assessments "spring out of the sovereign power of taxation," section 3290, subsection 1, confers a general power to levy and collect taxes. Subsection 12 confers power to levy advalorem taxes on real and personal property and franchises, for city not exceeding $1.50 per hundred, school tax, licenses and capitation tax. What effect is to be given to subsection one? It confers power to levy special taxes or assessments.

6. Enforcement of assessment. The assessment being past due,

City of Owensboro v. Sweeney.

being fixed and ascertained, a suit in equity for the enforcement of the lien may be maintained.

W. T. ELLIS and C. M. FINN for appellee.

MILLER & TODD and C. S. WALKER of counsel.

## STATEMENT OF QUESTIONS.

1. That under charters of cities of the third class, as they existed prior to the attempted amendment of March 21, 1906, the common councils of cities of the third class had no right to provide for sprinkling of the streets at the cost of the abutting property owners fronting on the streets sprinkled.

2. That the act of March 21, 1906, (Acts of 1906 p. 376) is unconstitutional.

3. That the ordinances of the city of Owensboro of April 18, 1906, and of June 29, 1906, attempting to sprinkle streets at the cost of the abutting property owners fronting thereof are void.

4. That the petition does not state a cause of action.

## AUTHORITIES CITED.

Maydwell, &c. v. City of Louisville, 25 Ky. Law Rep., 1062; Duke, &c. v. O'Bryan, &c., 100 Ky., 710; Chicago v. Blair, 24 L. R. A, 412; New York Life Insurance Co. v. Priest, 71 Fed. Rep., 815; O'Neal v. Tyler, 3 N. D., 47, (53 N. W., 434); Schwartz v. City of Oshkosh, 53 Wis., 490, (13 N. W., 450).

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The only question we need consider in this case is: Has the General Assembly of the State the power to enact a law giving cities the right to adopt ordinances imposing upon property abutting upon the streets and public places of the city a tax based upon the frontage of the property for the purpose of defraying the cost of sprinkling the streets and public places upon which the property abuts?

It has been expressly ruled by this court in May-

dwell v. Louisville, 116 Ky. 885, 25 Ky. Law Rep. 1062, 76 S. W. 1091, 63 L. R. A. 655, 105 Am. St. Rep. 245, that an ordinance enacted in pursuance of legislative authority levying an ad valorem tax upon property for the purpose of sprinkling the streets is not unconstitutional. The opinion was rested upon the ground that the sprinkling of streets contributes to the preservation of the public health, and hence the tax levied was for public purposes within the meaning of section 171 of the Constitution, providing that "taxes shall be levied and collected for public purposes only." The reasoning of that opinion, and the conclusion therein reached, we adhere to; but there is, as we shall endeavor to show, a marked difference in principle between laying a distinct tax for this purpose upon all property of a city, or upon all of the property in a taxing district if the city is divided into taxing districts, and levying a special tax upon real property according to its frontage. In the case before us, the tax is not levied upon property according to its value. The value of the property is not taken into consideration. Nor is the tax apportioned to correspond with the benefits received. A vacant lot, with a frontage of 50 feet, and worth only $100, must pay the same amount of taxes as a highly improved lot, with the same frontage, but worth $100,000. There seems to be something radically wrong with a tax that is arbitrarily assessed without any reference to the value of the property or benefits conferred, and, although it is everywhere recognized that perfect equality in taxation is impossible of attainment, the fundamental theory upon which all property taxes are imposed is that the property shall contribute in proportion to its value, and thus bear as near as may be its equal share of the burden. And

this theory of equality and uniformity is firmly fixed in the tax laws of this State. In more than one section of the Constitution it is clearly expressed that taxes shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale. But it is generally agreed that these principles, conceded to be sound, only apply to taxes collected for the purpose of defraying the expenses made necessary in the conduct of the governmental affairs of a city, and have no application to special taxes assessed for improvements, such as streets, sidewalks, gutters, and sewers. It is recognized by all the courts, including our own, that a municipality may lay a tax upon abutting land for purposes of local improvement, and the tax may be assessed according to the frontage of the property without regard to its value. Gosnell v. City of Louisville, 46 S. W. 722, 20 Ky. Law Rep. 519; Dillon on Municipal Cor porations, section 752. This manner of assessment and taxation in many instances works a gross injustice upon the property owners, as under it a vacant lot practically worthless may be burdened with the same tax as an adjacent highly improved and valuable lot. But, as this method of taxation under legislative authority has now become too firmly established to even question its soundness, all that remains for the courts is to restrain the power within proper and reasonable limits, and this restrictive supervision is made necessary by the growing disposition of municipal bodies to extend it to embrace many subjects not contemplated in its origin.

The question of municipal taxation is one of the most important and intricate public questions of the

day. Municipal authorities as a rule are disposed to be liberal in the imposition of taxes, and do not seem disturbed by the ever increasing burden of indebtedness that is accumulating upon the cities of the country. Fortunately, the Constitution of this State has placed a check upon the extravagant expenditure of public moneys and has fixed a limit beyond which a general property tax for public purposes cannot go unless assented to by the voters at an election held for that purpose. But this valuable and salutary limitation would afford little protection if, under the guise of improving property, special taxes might be levied without let or hindrance, and without regard to the constitutional limitations which do not apply to this method of taxation. If the right to lay these special assessments can be extended to embrace any subject which the municipal authorities, with the aid of the Legislature, deem it expedient to reach it will soon come to pass that the wise safe-guards of the Constitution will afford slight security to the taxpayer. To evade them, it will only be necessary for the municipal authorities to place the burden upon abutting owners under the pretense that it is an improvement tax, and hence may be charged in addition to the property tax imposed. Under this plan or scheme, should it be held allowable, if the general property tax in a city has reached the limit, and no larger sum can be gathered from this source, the city council may, by charging some of the current expenses of the city to abutting owners, divert to other uses the amount theretofore expended for this purpose out of the property tax collected. To illustrate, if the cost of maintaining the police department of a city is $10,000, and this sum has been paid out of the revenue derived from a general property tax, and the Legis-

lature can give the city the right to charge this item of expense against the abutting property owners, upon the ground that it is conferring a special benefit upon them in the preservation of the peace, order, and quiet of the city, then this $10,000 may be applied to other purposes. And so, if the fire department cost annually $20,000, and the city had appropriated this sum from the general revenue collected, it could, if so authorized, charge it against the property owners, and thus have this additional sum to use in other ways. And thus the matter might be extended, until the taxation, general and special, upon real property, would far exceed the constitutional limit, and the property owners be helpless. If property can be charged under a special tax with the expense of sprinkling the streets upon the ground that it is an improvement beneficial to the property, we see no reason why it may not be charged with the cost of maintaining the fire department, the police department, and the water and lighting system of the city, as it is more important that the city should have police and fire protection and a supply of water and light, than that the streets should be sprinkled. Indeed, there is more force and propriety in the argument that abutting property would receive benefits from police, fire, water, and light than it would from sprinkling.

But, in answer to all this, the argument is made that, in the absence of constitutional limitation, the Legislature is supreme, and to its wisdom and discretion must be left the settlement of these questions. It is true there is no limitation in the Constitution upon the power to levy improvement taxes, nor definition of what an "improvement tax" is: but it does not follow from this that the Legislature is so abso-

lutely supreme that its authority cannot be questioned. Arbitrary power exists nowhere in this republic. There is a line at which the power to tax and take for special assessments must stop. The only question is where to draw it, and, in the character of tax under consideration, we may safely say that it must stop when it goes beyond real and substantial benefits to the abutting property, distinct from those enjoyed by the public. The theory upon which special taxes are sustained is that the property assessed receives special benefits in addition to those received by the community at large. "This," says Dillon in his work on Municipal Corporations, in section 761, "is the true and only just foundation upon which local assessments can rest. And to the extent of special benefits, it is everyhere admitted that the Legislature may authorize local taxes or assessments to be made." Cooley on Taxation, section 1153, lays it down that: "There can be no jurisdiction for any proceeding which charges the land with an assessment greater than the benefits. It is a plain case of appropriating private property to public use without just compensation; and a clear case of abuse of legislative authority in imposing the burdens of a public improvement on persons or property not specially benefited would undoubtedly be treated as an excess of power and void." The Supreme Court of the United States, in Illinois Central R. Co. v. City of Decatur, 147 U. S. 190, 13 Sup. Ct. 293, 37 L. Ed. 134, in discussing the difference between general taxes and special taxes, said: "On the other hand, special assessments or special taxes proceed upon the theory that, when a local improvement enhances the value of neighboring property, that property should pay for the improvement"—and quotes with approval from

Cooley on Taxation, the following: "Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be especially or peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds. And in addition to the general levy they demand that special contributions in consideration of the special benefit shall be made by the person receiving it. The justice of demanding special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of the public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay. This is the idea that underlies all these levies." And so in the Law of Special Assessments by Hamilton (section 236), the rule is announced, supported by ample authority, that: "Special taxation for a local improvement, as well as special assessments of benefits for same, necessarily proceeds upon the theory of benefits to the property on which it is levied, and that a burden imposed upon any other theory is a mere arbitrary exaction—a taking of private property for public use without just compensation." And in Smith's Modern Law of Municipalities, section 1228: "A special assessment, or local assessment, as it is frequently called, is a species of taxation imposed by municipalities for the purpose of local improvement, and is based upon the assumption that the property in the locality of the property improved will be specially and peculiarly benefited thereby, by which a duty is imposed upon owners to contribute an amount in payment of the cost of the improvement equal to the

benefits received. * * * Special assessments rests
upon the ground that special burdens may be im-
posed for special or peculiar benefits accruing from
public improvements.  Local assessments can only
be imposed to pay for local improvements clearly
conferring special benefits on property assessed, and
to the extent of those benefits only.''  And this court,
in a long line of cases in harmony with the foregoing
principles, has held that all municipal assessments
are based upon the ground that the property sub-
jected to the assessment is benefited by the improve-
ment for which the assessment is made.  Preston v.
Roberts, 12 Bush, 570; Broadway Baptist Church v.
McAtee, 8 Bush, 508, 8 Am. Rep. 480; Bradley v.
McAtee, 7 Bush, 667, 3 Am. Rep. 309; Zable v.
Louisville Baptist Orphans' Home, 92 Ky. 89, 13
Ky. Law Rep. 385, 17 S. W. 212, 13 L. R. A. 668.
Some courts hold that the right to impose local
assessments is derived from the police power of the
State.  Hamilton on Special Assessments, section 40.
But, it is not necessary to resort to the police power
to find authority for the laying of taxes of this char-
acter.  We think the safe, conservative, and well-
defined place to rest them is upon the theory that
they may be imposed as an equivalent for benefits
conferred that are not enjoyed by the general public.
It is upon this ground that this court, as well as nearly
all the others, has found its justification in imposing
them.

We may therefore announce, as sound in principle
and supported by ample authority, the doctrine that
special taxes cannot be levied unless the property
charged receives a corresponding physical, material,
and substantial benefit from the exaction; and, fur-
thermore, that if the assessment does not confer a

physical, material, and substantial benefit, it will be invalid upon the ground that it is an attempt to take private property without just compensation, in violation of the Constitution. So that the question narrows down to the proposition whether or not street sprinkling may be considered an improvement in the sense that the adjacent property derives special benefits of the character described from it distinct from the benefits received by the public generally. If a sidewalk or gutter or street is constructed in front of property, the reasonable and natural result is that the property derives some benefit and advantage from the improvement, and something substantial or at least tangible is added to its value. Of course, the value of improvements to adjacent property may be different, depending on the use to which the property is put, its situation and surroundings, and in many instances it may not be very appreciable and fail to realize the expectation on which the levy is made. But, nevertheless, all of the property is to some extent benefited, or at least this is the object and reasonable intent of the improvement. But sprinkling streets does not, in our opinion, confer a special benefit upon the adjacent property in the sense of contributing to its value, and hence a special tax for this purpose cannot be sustained upon the only ground that this class of taxation rests.

The view we have announced is in harmony with the ruling of the Supreme Court of Illinois in Chicago v. Blair, 149 Ill. 310, 36 N. E. 829, 24 L. R. A. 412, where, in considering a similar question, it was said: "In the nature of things, the sprinkling is only useful while the work is continued. In a few hours the beneficial effects are gone, and the property is worth no more than before the street was sprinkled. It

is insisted, however, that all improvements—the
building of sidewalks, the paving of streets, of how-
ever lasting material—are evanescent, and that in a
few years at most they will necessarily require re-
newing, and that it makes no difference whether it
be water put upon the street, or wood or granite; that
all alike are but temporary in character. In a sense
this is true, but not in a practical sense. It is com-
mon experience that well-paved streets and convenient
and durable sidewalks, furnishing access to property,
do in fact enhance its market value. It is, however,
insisted that the sprinkling of the street during the
summer months renders the occupation of the adja-
cent property more enjoyable and comfortable, and
that therefore the *property is enhanced in value.
Doubtless, the same result would follow by placing
vases at convenient points on the street, to be filled
every morning with fresh-cut flowers; or by open-air
concerts in which music should be selected with ref-
erence to the taste of the adjacent dwellers.'' To
the same effect is Petitt v. Duke, 10 Utah, 311, 37
Pac. 568. Judge Phillips, in New York Life Insur-
ance Company v. Prest (C. C.) 71 Fed. 815, said:
''Under such ordinances, streets are sprinkled in
front of vacant lots on which are neither houses nor
any living creatures. It could hardly be said with
reason that running a sprinkling car now and then
in front of such a lot adds to its market value; nor
is there in such occasional laying of the dust any
semblances of permanency. It is as evanescent as
the early and later dew, and in my judgment it is no
more within the power of the municipality thus to
create liens on the citizen's property than to hire 'rain
makers' to vex the skies for refreshing showers, and
charge the lots adjacent to the raindrops with the

cost thereof. As the sprinkling of the public high-ways of a city, like the cleaning thereof, contributes much to the comfort and enjoyment of the property, its cost should be made a general, and not a special, burden."

A contrary view is maintained in State v. Reis, 38 Minn. 371, 38 N. W. 97, where it is said: "The re-lator's main contention, however, is that street sprinkling is not an 'improvement' within the meaning of this section of the Constitution, because it lacks the element of permanence; that its results are tran-sient; and that, to constitute an improvement, there must be some work or structure, such as a pavement, sidewalk, or the like, that will remain after the labor is performed, and permanently enhance the value of the property. But, if permanence or durability is to be the test, how long must the beneficial results last in order to constitute an improvement? It cer-tainly will not be claimed that the work must be eter-nal in duration, or imperishable in character. We are unable to see any difference in principle between the work of street sprinkling, the results of which, un-less repeated, last but a day, and the construction of a block pavement or wooden sidewalk, which wears out or decays, and has to be rebuilt every few years. When a pavement or sidewalk has worn out, the future value of the property is not enhanced by it, any more than it is by street sprinkling when that ceases Neither do we see that it makes any differ-ence whether the substance applied to the surface of the street is wood, which has to be renewed every few years, or water, which has to be applied daily. Each benefits the adjacent property as long as it lasts, and no longer. It is not the agency used, or its compara-tive durability, but the result accomplished, which

must determine whether a work is an improvement in the sense in which that work is here used''—and by the Massachusetts Supreme Court, in Sears v. Board of Aldermen, 173 Mass. 71, 53 N. E. 138, 43 L. R. A. 834, and the Supreme Court of Indiana, in Reinken v. Fuehring, 130 Ind. 382, 30 N. E. 414, 15 L. R. A. 624, 30 Am. St. Rep. 247.

The foregoing opinions present the conflicting views touching this question held by other courts, and, while there is much plausibility in the reasoning of the Minnesota case, we are not impressed with its soundness. There is clearly a difference not only in degree, but in principle, between the occasional and temporary convenience and pleasure that laying the dust in the street confers, and the permanent and useful advantage that comes from well-paved sidewalks or macadam streets that are suitable and serviceable for travel in rain or shine, summer and winter. Abutting property cannot be taxed alone for the convenience or pleasure or comfort of the persons who use the streets, or in order that the neighboring premises may be made more attractive and beautiful to look upon. The rights of the owner must be considered. If his property is taken, he must receive some material substantial benefit as an equivalent for the exaction. The city as a whole may, as we have held, devote a portion of its revenue to this purpose, as indeed it may and often does to the purchase of other conveniences that are esteemed of public service and yet, practically considered, result in doubtful benefits to the general public. But there is no good reason why the individual owner should be burdened, in addition to the heavy load of municipal taxes, with charges that are levied without corresponding benefits.

The law authorizing the tax, as well as the ordinance under which it was imposed, are both invalid,. and the judgment of the lower court is affirmed.

JUDGE HOBSON, dissenting. The opinion of the court is based on the case of Chicago v. Blair, 149 Ill. 310, 36 N. E. 829, 24 L. R. A. 412; but the court fails to observe that there the Legislature had not authorized the city to provide that the cost of sprinkling the streets should be paid by special assessments. The Legislature there had only authorized the city to make local improvements by special assessments. That is not the case here. The Legislature has in express terms authorized the city to make the assessment for sprinkling the streets precisely as it was made. That case is therefore not in point. It was followed in New York Life Insurance Co. v. Prest (C. C.) 71 Fed. 815, a nisi prius opinion by the district judge, who also failed to notice that the case rested on a want of legislative authority to the city to do what it had done. Wherever the Legislature has. authorized a special assessment to pay for the sprinkling of the streets, the courts have, as a rule, sustained the legislation. See Stark v. Boston, 180 Mass. 293, 62 N. E. 375; Reinken v. Fushring, 130 Ind. 382, 30 N. E. 414, 15 L. R. A. 624, 30 Am. St. Rep. 247;State v. Reis, 38 Minn. 371, 38 N. W. 97. Special assessments to pay for the sprinkling of the streets are not unlike special assessments to keep the streets free from snow and ice or to keep them free from dirt by sweeping, and these have been, we believe, universally sustained. Carthage v. Frederick,. 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490; 1 Abbott on Municipal Corporations, section 340, and cases cited. If a tax is levied upon

the whole city and applied to the sprinkling of the streets, a large number of persons who pay the taxes must of necessity get little benefit from it, as the sprinkling is necessarily confined in the main to the business and more populous parts of the city. It is one of those things of which the persons who peculiarly receive the benefit should bear the burden. The limitation placed by the Constitution as to the amount of taxes which municipalities may levy applies to those things which should be met by a general tax on all the people. It does not apply to those things which are local in character and ought to be paid for by those receiving the benefit. It is conceded that there is no other limitation in the Constitution affecting the matter, and, this being so, the discretion of the Legislature in prescribing how a matter of local benefit, like sprinkling the streets, shall be paid for, is unrestricted. So it is that the great weight of authority sustains the legislation in question. Any plan for paying for street sprinkling will produce great hardships. Under the plan which was held constitutional in Maydwell v. Louisville, 116 Ky. 885, precisely the same hardship might result as is illustrated in the opinion. A man might have property worth $100,000, and be so situated that no sprinkling would ever be done in front of his property or where he might get no benefit from it, and if his $100,000 worth of property consisted of vacant lots, we would have just the hardship supposed in the opinion. What is the most just way of placing the burden may vary from time to time, and therefore the whole matter should be left to the discretion of the Legislative and the municipal councils who represent the people that must in the end pay the taxes and are best qualified

to properly consider the interests of their con-
stituents

I therefore dissent from the opinion of the court.

JUDGES BARKER and LASSING, concur in this dissent

Petition for rehearing by appellant overruled.