## Book, et al. v. Trigg, et al.

### (Decided January 27, 1920.)

## Appeal from Henderson Circuit Court.

1. Drains—Establishment and Maintenance—Assessment of Taxes.— The assessment of special taxes, upon land, such as are assessed for the contruction and maintenance of public drainage ditches, can only be justified upon the grounds, that they are imposed to pay for improvements, which confer special benefits upon the lands, assessed, and to the extent of such benefits only.

2. Drains—Establishment and Maintenance—Res Judicata.—Where a court has established a drainage district and ordered the construction of a public ditch, the question as to whether, the improvements are conducive to the public health and for the general welfare, and whether the lands within the district will be benefited, in the ratio of assessments and apportionment adopted by the court, if the ditch shall be constructed according to the plans and specifications, adopted by the court for the construction of the ditch, are things res judicata.

3. Drains—Obstructions—Assessment of Taxes.—Under subsection
   39, section 2380, Kentucky Statutes (1915, vol. 2), the drainage
   commissioners may, for each year, levy assessments upon the
   lands within the drainage district, not exceeding ten per centum
   of the original assessments, and expend, whatever, sum of same,
   which is available, in "keeping the ditch open," and "free from
   obstruction," of whatever kind within the specifications for the
   construction of the ditch, which were adopted by the court, when
   it was ordered to be constructed.

4. Drains—Repairs of Drains—Discretion:—The necessity for repairs
   of public ditches, and the work necessary to free them of obstruc-
   tion, within the limits of the specifications for their construction,
   as adopted by the court, are matters within the sound discretion of
   the drainage commissioners, and their discretion will not be in-
   terfered with by the courts, unless the discretion is abused.

DORSEY & DORSEY for appellants.

YEAMAN & YEAMAN for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Eighteen, of the one hundred and fifty landowners,
whose lands were assessed for the construction of the
Sellars public ditch, in Henderson county, and who, now,
compose the landowners within the Sellars public ditch
drainage district, brought this action against the sheriff
and the members of the board of drainage commission-
ers, for an injunction to restrain the sheriff from col-
lecting the assessments, levied upon the lands within the
district, for the years, 1916 and 1917, and to restrain the
commissioners from making and levying any further
assessments. The drainage district was established by
a judgment of the county court, which was affirmed upon
an appeal to the circuit court, and finally upon an ap-
peal to this court, in the year, 1909, and the construction
of the Sellars public ditch ordered to be made, and to
be paid for by an assessment upon the lands within the
district, in accordance with the benefits to be derived by
the lands from the construction and operation of the
ditch. The proceedings, for a judgment, establishing
the district and directing the construction of the ditch,
were begun in the year, 1901, and were continued from
time to time, until the final judgment, in the year, 1909.
The purpose of the construction of the ditch, was to
straighten Canoe creek, and thereby, to more effectually
drain twenty to forty thousand acres of fertile land,

and, thereby, to increase its productiveness and usefulness, and the proceeding was based upon the grounds, that its construction would conduce to the good health and general welfare of the community. The head of the ditch connects with Canoe creek about fifteen miles, as the creek meanders, from its mouth upon the Ohio river, and the mouth of the ditch opens into the creek, about three or four miles, as the creek meanders, from its mouth upon the river. The ditch is between a mile and a quarter and a mile and a half in length from its head to its mouth, and the natural decline, in elevation, from the head to the mouth of the ditch, is nineteen feet. The construction of the ditch and the turning of the waters of Canoe creek through it, would thus reduce the length of the creek about twelve miles, as it now meanders, and thus would relieve many thousands of acres of land from the effects of its waters, especially during overflows, both above and below the head of the ditch. The decline, in elevation from the head to the mouth of the ditch, would seem to insure, that the waters of the creek, would pass through it with great rapidity, if once the waters could be induced to pass through the ditch. The passage of the waters through the ditch in such volume, and with such rapidity of movement, would naturally enlarge and deepen the ditch, until it would fully perform the office for which it was intended, and which was in contemplation when its construction was determined upon. The specifications, for the construction of the ditch and which were approved by a judgment of the court, required, that the bottom of the ditch should follow a line from its head to its mouth, which should give such a fall to the waters entering it at its head, that, by their own momentum, they would flow through the ditch, but, in its construction, the contractor, instead of digging the ditch to the specified line, so constructed same, that at a point about equi-distant between the ends of the ditch, the bottom of the ditch was left at an elevation of about nine feet above the level of the grade base line and about eleven feet above the level of the bottom of the creek, at the head of the ditch. Whether the construction of the ditch, after this plan arose from a dereliction of the contractor, or from the suggestion of some one else, does not appear, but in this incomplete condition, it was accepted by the county engi-

neer as having been completed in accordance with the
plans and specifications according to which it was
ordered to be completed by the judgment of the court.
It is presumed, that the original estimate of the cost of
the construction of the ditch, was assessed upon the
lands within the district and apportioned between the
owners of the same in accordance with the ratio of as-
sessment and apportionment, adopted by the court, and
that these assessments were all paid, as the record is
entirely silent upon that subject. It is alleged, however,
and not denied, that in each year, since the ditch was
constructed and received as having been completed, a
tax has been assessed upon the lands within the district,
not exceeding, in any year, 10 per centum of the orig-
inal assessment for the construction of the ditch, and
these taxes have been paid each year, until the year, 1916.
It does not fully appear to what purpose, these taxes
have been applied, except, that at one time, a dam was
constructed across Canoe creek at the head of the ditch,
in an endeavor to force the water of the creek through
the ditch, upon the theory, that the action of the waters
would cut out the bottom of the ditch to the desired level,
but the dam was not built of a sufficient height, and
failed to effect its purpose, and was finally washed away.
Other sums have been expended in removing willows,
which have grown up in the ditch, and dirt, which has
fallen in from its banks, and the taxes, collected for the
year, 1915, were expended by the commissioners in deep-
ening the ditch, commencing at the end near its mouth
and extending toward the high point in the bed of the
ditch, and this action resulted on several occasions, when
the waters were very high, in the creek, in causing them
to flow through the ditch over the high point, but, they
ceased to do so, when the water receded from the ceasing
of the rains. The contention of the taxpayers who are
maintaining this suit, is, that the ditch, as accepted by
the county engineer, has never been of any benefit to the
lands, owned by them, and that the ditch has entirely
failed to perform the purpose for which it was intended,
and that the collection of the taxes, for the years, 1916
and 1917, is an arbitrary exercise of power on the part
of the authorities, and is not warranted by law, in that
the purpose, for which they are collected, is not and can
not benefit the lands, assessed; and the taxes, collected
upon such assessments, can not be appropriated to deep-

ening the ditch, and that the deepening of the ditch to the line, fixed by the original specifications for its construction, would entail a cost equal to the original construction of the ditch; while upon the other hand, it is contended, by the drainage commissioners, that the plan of the construction of the ditch, is a practical one, and, that if deepened to the line, intended, it would accomplish the purpose intended, and the appropriation of the assessments made from year to year to the deepening of the ditch to the specified line would accomplish that purpose, and that it would require an expenditure not exceeding $6,000.00 to deepen the ditch to the specified line, and that the assessments upon the land, which the statute permits the drainage commissioners to make, would produce a sufficient sum of money to deepen the ditch to the required depth within three or four years. The original cost of the ditch appears to have been between eighteen and twenty thousand dollars.

(a) The assessment of special taxes upon lands such as are assessed for the construction and maintenance of public drainage ditches, can only be justified upon the grounds, that they are imposed to pay for local improvements, which confer special benefits upon the lands, assessed and only to the extent of such benefits. Williams v. Wedding, 165 Ky. 373; City of Owensboro v. Sweeney, 129 Ky. 607; Zable v. Louisville Baptist Orphans Home, 92 Ky. 89; Bradley v. McAatee, 7 Bush 667; Broadway Baptist Church v. McAtee, 8 Bush, 508; Preston v. Roberts, 12 Bush 570. The evidence, in the instant case proves, that the existence of the ditch in the manner in which it was constructed, from the time of its acceptance until the bringing of this action, has been of very little benefit to the lands, assessed for its construction and maintenance, as only upon occasions of high tides in the waters of the creek, will any portion of the waters flow through the ditch, but, upon such occasion, it doubtless assists in relieving the lands, intended to be drained, from excessive overflows. It must, however, be conceded that the question of whether the construction of the ditch in accordance with the plans and specifications adopted by the court for its construction, would benefit the public health and general welfare, and the further question of whether the lands, embraced in the drainage district, established for the construction and maintenance of the ditch would be benefited in the ratio

of assessment and apportionment, adopted by the courts, if the ditch was constructed in accordance with the plans and specifications approved by the courts, are things *res judicata*. Hence, the adjudication by the courts in the establishment of the drainage district, and in ordering the construction of the ditch being necessarily to the effect, that if a ditch was opened to the depth of the line, prescribed by the specifications, the waters of the creek would flow through the ditch, and that the results contemplated and intended by its construction, would be accomplished, such conclusion can not now be called in question, at least not until the ditch is completed according to the specifications for its construction, adopted by the court, and it should then fail to accomplish the results, intended. Indeed, we do not understand, that the appellants are seriously contending, that the ditch, if completed as the court ordered it to be done, will not accomplish all that was intended in its establishment, but, they contend, that the cost of its completion will equal the sum originally paid for its construction, but, it is not contended by any one, that the payment of the additional sum necessary to deepen the ditch to the line, fixed in the specifications, will cause the sums, expended, to be an amount in excess of the benefits to be derived from its construction. The only material variance in the construction of the ditch from the specifications, adopted for its construction, was the failure, through mistake or otherwise, to dig the ditch to the depth, specified, and the weight of the evidence conduces to prove, that the ditch may be deepened to the depth originally specified and desired, for a sum not in excess of one-third of the sum originally estimated and levied for its construction. The collection and expenditure of the funds, which will arise from the taxes, levied each year upon the lands within the district by the commissioners, in maintenance of, and deepening the ditch within the limits of the specifications for its construction, originally adopted by the court, can only result in bringing the ditch nearer to completion, as ordered by the court, and the construction of the ditch, within those specifications, having been adjudged by the courts to be a work of public utility, and specially beneficial to the lands within the district, the expenditure of such taxes can not, now, be said not to be for a public purpose, or one which is not beneficial to the lands, as-

sessed, or to be a burden in excess of the benefits, derived from the collection and expenditure of the taxes.

(b)   It is insisted, that the board of drainage commissioners are without authority to expend the taxes, collected from assessments, made by them, for any year after the assessment made for the original estimated cost of the construction of an improvement, in completing an improvement according to the specifications, adopted by the court, for its construction, where for any reason it has not been so completed before its acceptance by the county engineer, and for such reason that the drainage commissioners can not, lawfully, expend the money, which will arise from collection of the taxes here complained of in deepening the ditch, and therefore, the ditch in its present condition being of no benefit to the lands, assessed, and nothing short of deepening the ditch will avail to make it of any benefit, the imposition of the taxes, is unwarranted, and an arbitrary exercise of power by the commissioners. As a matter of course, if the commissioners are not authorized to expend the taxes for the purpose of deepening the ditch to the original specifications, they would be without authority to levy the taxes for such purpose and if the assessments are not of any benefit to the lands assessed for any purpose for which the commissioners have authority to levy and collect them, their imposition is not warranted. The authority for the commissioners imposing the special taxes or assessments for the years, 1916 and 1917, is found in subsection 39 of section 2380 Kentucky Statutes (1915), vol. 2. The section so far as is necessary to be quoted, is as follows: "It shall be the duty of said board to keep all such . . . ditches . . . under its charge, open, free from obstructions and in good repair. For the purpose of providing funds to pay the compensation, herein provided, to the board of drainage commissioners, its agents, servants and employees, outside of that portion of same which shall be provided for and paid out of the original assessment on any drainage ditch as well as to pay the cost and expense of repairing, keeping open and looking after the various public ditches . . . the lands in each drainage district . . . shall be, and the same are hereby authorized to be assessed in proportion to the original assessment, made or which may be made against them for the original establishment and construction of such drainage system."

The section further provides, that an assessment shall not exceed 10 per centum of the original assessment against the lands. The legislature has provided the rule to be applied in construing the above statutes by the courts, and it may be found in subsection 49 of the section, *supra*, and is as follows: .

"The provisions of this act shall be liberally construed, so as to carry into effect the true intent and meaning thereof, and to promote the levying, ditching, draining and reclamation of wet, swampy or overflowed lands." A distinction should be drawn between the state of case, which exists, where the drainage commissioners under the guise of "keeping open, free from obstructions and in good repair" a ditch, they proceed to expend the taxes, which they are authorized to levy, under the section of the statute, *supra*, in enlarging, widening or deepening a ditch, beyond the limits of the specfications for the ditch, which were adopted by the court, for its construction; and the state of case, where the only attempt to keep it "open and free from obstructions" is within the limits of the adjudged specifications, and in doing so, remove any obstruction, which should have been originally done, in endeavoring to make the ditch conform to the specifications, which the court, in its establishment, adjudged, that it should have. Applying to the statute the liberal construction, which the legislature enacted should be applied to it, it should be held, that the ditch, which, "to keep open and free from obstructions," was made the duty of the commissioners, was the ditch, which the court ordered to be constructed, and that anything which obstructs it, within the limits of the specifications adopted for its construction, is an obstruction, within the meaning of the statute. To keep it open, is to maintain it, so that the waters will flow through it, as it was intended. A construction, which would require a ditch, when for any unforeseen occurrence, or mistake of an officer, and when substantially completed, at a great cost to the landowners, to be abandoned, or to remain abandoned, unless and until revived by a proceeding, in the nature of an original proceeding to construct it, to remove something, though of inconsiderable dimensions, out of the ditch, within the limits of the original specifications, would not be a construction of the statute, which would carry into effect, the true meaning or intent thereof, or in the promotion of the ditching or draining of wet or swampy

lands. To undertake to deepen or enlarge a ditch beyond the original specifications adjudged for its construction, of course, would not be within the discretion of the commissioners, and they would be without authority to levy or collect or expend taxes for such purpose. Racer v. State, 131 Ind. 393; Fries v. Brier, 111 Ind. 65; Weaver v. Templon, 113 Ind. 302; Dunkle v. Herron, 115 Ind. 473. The necessity of expenditures to "keep open and free from obstructions" a public ditch and the work to be done to that end, are things within the sound discretion of the drainage commissioners, and this discretion will not be interfered with, unless it is abused. Williams v. Wedding, *supra.*

The commissioners were authorized to levy the assessments, complained of, if not in excess of 10 per centum of the original assessments, and apply same to the purposes mentioned in subsection 39, *supra,* which includes an expenditure of whatever is available of such levies, to making the ditch "open and free from obstructions" to the width and depth of the specifications adopted for its construction, and this, they may do, although by legislation subsequent to the establishment of the district, means are provided, whereby another assessment may be made. by a proper proceeding in the courts, sufficient to deepen the ditch to its original specifications, or beyond same, at once; and not to wait for the application of the limited assessments, which the commissioners are enabled to make from year to year. ·

The judgment is therefore affirmed.